Curtis E. McALLISTER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 222, 2000.

Supreme Court of Delaware.

Submitted: June 26, 2002.

Decided: Aug. 30, 2002.

Joseph A. Hurley, Esquire, Wilmington, for Appellant.

Timothy J. Donovan, Jr., Esquire (argued) and Elizabeth R. McFarlan, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

WALSH, Justice.

In this appeal from the Superior Court, we consider whether a warrantless search of a probationer's person and residence, conducted by State probation officers, was proper. We conclude that, given the circumstances surrounding the defendant's confrontation with probation officers, the officers had probable cause to conduct the search and the Superior Court correctly concluded that the drugs subsequently seized from the defendant should not have been suppressed. Accordingly, we affirm.

## I.

On March 14, 1997, the appellant, Curtis McAllister ("McAllister"), was arrested on drug charges following a search of the Wilmington home in which he resided. On that date, shortly after 9:00 a.m., Gregory Morehart ("Morehart"), a probation officer with the Delaware Department of Correction, received a telephone tip from a confidential informant that illegal drugs could be found in a padlocked bedroom at the residence shared by two probationers, Norma Johnson and Curtis McAllister. The informant had previously provided Morehart with similar information, but was not one of his probationers. At the time, both Johnson and McAllister were serving a term of probation for previous convictions of drug offenses.

After receiving the tip, Morehart proceeded to a previously scheduled event and did not return to his office until midday. When he returned, Morehart called Johnson, whom he was assigned to supervise, and informed her that he wanted to make a home visit. Johnson told Morehart that she was about to leave, but would wait for Morehart to arrive. McAllister's assigned probation officer was not working that day. Before going to the Johnson residence, Morehart attempted to reach Thomas Scully, a higher ranking probation officer who also supervised McAllister's probation officer. Scully was out of the office, however, and could not be reached.

Morehart was concerned that Johnson would not continue to wait for him, so he requested the assistance of three other probation officers to accompany him immediately to the Johnson residence. Morehart asked Scully's secretary to continue to try to contact Scully, and informed her where he and the other officers were going. When they arrived at the Johnson residence, Johnson allowed the probation officers into the house. Morehart explained that he had received information that there were drugs in a padlocked room. Johnson acknowledged that one room was padlocked, but that McAllister occupied the room and she did not have a key. While the officers were speaking with Johnson, Morehart saw McAllister's car pull up outside. Morehart went out to meet McAllister and escorted him inside. Without administering a *Miranda* warning, Morehart questioned McAllister about the allegations made by the informant. McAllister admitted that he had a key to the padlocked room and that he sometimes slept there. When Morehart informed McAllister that he intended to search the room in order to determine the validity of the allegation, McAllister became agitated and attempted to flee the residence. The probation officers restrained and hand-

cuffed McAllister. The officers then conducted a search of McAllister's person and found a large bundle of cash in his pocket, as well as a set of keys. The Wilmington police were called to assist the probation officers.

At this point, one of the probation officers, Mark Herron, finally spoke with Scully, who had called the residence. After describing the circumstances leading up to that point in time, Scully authorized the probation officers to search McAllister's room. Using a key obtained from McAllister, Morehart and Herron entered the room and saw what appeared to be drugs lying on the bed. The probation officers left the room and informed the police of their discovery. McAllister and Johnson were taken into custody and, after obtaining a search warrant, the police confiscated the contraband from McAllister's room.

Prior to his trial on the drug charges, McAllister filed a motion to suppress the contraband and the statements he made to Morehart, alleging that the evidence was obtained in violation of his constitutional rights. The trial court denied that motion, and the case proceeded to trial. A jury found McAllister guilty of trafficking in heroin, possession with intent to deliver heroin, maintaining a dwelling for the use or consumption of narcotics, conspiracy in the second degree, and possession of drug paraphernalia. This appeal followed.

## II.

■ McAllister challenges the trial court's refusal to suppress evidence seized from his person and room, as well as statements he made to the probation officers upon initial questioning. This Court reviews the trial court's denial of a motion to suppress, after an evidentiary hearing, under an abuse of discretion standard. *Liu*

*v. State,* 628 A.2d 1376, 1379 (Del.1993); *Alston v. State,* 554 A.2d 304, 308 (Del. 1989). To the extent McAllister's claims of error implicate questions of law, however, this Court will exercise *de novo* review. *Downs v. State,* 570 A.2d 1142, 1144 (Del. 1990). Finally, factual findings made by the trial court will be disturbed only if not the result of a logical and orderly deductive process. *Id.*

■ Initially, we dispose of McAllister's claim that the trial court used an incorrect legal standard in ruling on his motion to suppress. The State concedes that the trial court improperly placed the burden on McAllister to establish that his Fourth Amendment rights had been violated by the challenged search. *See Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Mason v. State,* 534 A.2d 242, 248 (Del.1987) (both holding the State bears the burden of demonstrating the existence of an exception to the warrant requirement). Following the initial briefing in this case, we ruled that the Superior Court had improperly allocated the burden when deciding McAllister's motion to suppress. We remanded the matter to the trial court for a determination of the motion to suppress under the appropriate burden of proof. The trial court submitted a supplemental report that, in essence, confirmed its original decision, holding that the State had carried its burden of proving that an exception to the warrant requirement existed under the circumstances. Accordingly, we find the trial court's original error in assigning the burden of proof to be harmless beyond a reasonable doubt. *Chapman v. State,* 791 A.2d 750 (Del.2002).

■ McAllister mounts a broad-ranging attack upon the constitutionality of the statutory authority exercised by probation officers and the specific conduct of the officer who confronted McAllister at the time of his arrest. The legislative authority permitting probation officers to effect searches of the individuals they supervise is found in 11 *Del.* C. § 4321. The Department of Correction has, pursuant to that authority, adopted regulations regarding warrantless searches of probationers. Those regulations provide that, prior to a personal search or a living quarters search, the probation officer and the supervisor "shall have a case conference" and "[t]he Pre–Search Checklist should be used as a guideline unless emergency circumstances dictate otherwise." Dept. of Correction Procedure 7.18. Further, "before any search is conducted, Officers must first have the approval of a supervisor or designee, unless emergency circumstances dictate otherwise." Dept. of Correction Procedure 7.19. There is no dispute that Morehart did not have a case conference with a supervisor before proceeding to the Johnson residence, nor did he complete a pre-search checklist. Morehart testified, however, that he did consider the elements of the checklist "in his mind" before deciding to search. Supervisory approval for a search was obtained before the search of McAllister's room.

### III.

■ The search in this case was conducted by probation officers, acting in their official capacity as supervisors of Johnson and McAllister's probation. *See* 11 *Del.* C. § 4321(d) * (authorizing proba-

---

* 11 *Del. C.* § 4321(d), in its entirety, provides:
Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation

and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the

tion officers to conduct searches of individuals under probation supervision in the performance of the lawful duties of their employment). As the United States Supreme Court has observed, "inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (internal citations omitted). Given that backdrop, we address the validity of the search as it unfolded. First, the probation officers had a legitimate right to enter the Johnson residence with Johnson's consent. Searches conducted pursuant to a valid consent represent an exception to the warrant requirement. *Scott v. State*, 672 A.2d 550, 552 (Del.1996) (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 221–22, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). In order to be valid, a consent must be voluntary and given by a person with the authority to do so. *Id.* There is no dispute in this case that Johnson's consent was valid.

■ Once lawfully present in the Johnson residence, the probation officers were able to corroborate the tip Morehart received. Johnson confirmed that there was a padlocked bedroom in the house and that it was occupied by McAllister. It is at this point, after the independent corroboration of a tip from a confidential informant, that McAllister's first contact with the officers occurred. An informant's tip that is corroborated by independent police work can form the basis for probable cause, regardless of what is known about the informant's personal credibility or reliability. *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).

■ When McAllister arrived at the residence, which was presumably McAllister's intended destination, Morehart went outside to meet him. Morehart identified himself to McAllister (whom he had met previously), indicated that he was interested in speaking with McAllister, and escorted McAllister inside. Once inside, McAllister was informed of the tip received by Morehart. McAllister acknowledged that he sometimes slept in the padlocked room and that he had a key. Morehart told McAllister that he wished to search the room in order to verify the validity of the tip. It was at that point that McAllister attempted to flee and was detained by the probation officers.

■ When McAllister attempted to flee, the probation officers had a right to detain him, because probable cause existed to believe that McAllister was in violation of his probation. *See Woody v. State*, 765 A.2d 1257, 1265 (Del.2001) (holding a defendant's unprovoked flight is a proper consideration in probable cause analysis). The probable cause standard is a practical, nontechnical concept that must be measured by the totality of the circumstances. *Thompson v. State*, 539 A.2d 1052, 1055 (Del.1988). This requires a case by case review of the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Hovington v. State*, 616 A.2d 829, 833 (Del.1992). In this case, the officers had a verified tip from a confidential informant, coupled with an admission and suspicious behavior from the defendant, a probationer. The totality of theses circumstances gave the officers authority to detain McAllister. *See King v. State*, 633 A.2d 370 (Del.1993) (tip from past proven

---

officer by any court, judge or Board of Parole of this State; however, a probation and parole officer shall only have such power and duties if the officer participates

in and/or meets the minimum requirements of such training and education deemed necessary by the Department and Board of Examiners.

reliable confidential informant, coupled with detectives' observations at the scene, clearly established probable cause to arrest). The subsequent search of McAllister's person, incident to his detention, was also proper. *See id.; citing Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to arrest is permissible, in order to remove any weapons and to seize evidence on arrestee's person).

■ Having lawfully retrieved a key to the padlocked room from McAllister's pocket, the probation officers then used the key to enter his room. Before doing so, the probation officers obtained permission from a supervisor, who verified that the circumstances justified the intended search. Given the totality of the circumstances, including McAllister's status as a probationer and his limited privacy rights resulting therefrom, the officers' use of the key to open the locked door was reasonable and did not contravene the Fourth Amendment or Article I, § 6 of the Delaware Constitution. *See U.S. v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (upholding warrantless searches of probationer's homes under the Fourth Amendment, so long as they are reasonable under the circumstances). Once the door was opened, items that appeared to be illegal narcotics were in plain view. The probation officers then handed the investigation over to the Wilmington police, who obtained a valid search warrant before entering the room and confiscating the drugs.

■ Although we affirm the trial court's denial of McAllister's motion to suppress in this case, we note that probation officers are not sworn police officers, and are subject to constraints that do not apply to police officers. Probation officers have authority to detain probationers and

execute searches of their persons or property only to the extent granted them by the General Assembly. Particularly when conducting warrantless searches, probation officers may act only pursuant to explicit statutory authority. While the conduct of the probation officers in this case was haphazard and uncoordinated, they did not overstep their supervisory authority over a person who continued under the control of the Department of Correction.

Because we find that the search conducted by the probation officers was reasonable and supported by probable cause, we need not address McAllister's claim that 11 *Del.* C. § 4321(d), and the accompanying Department of Correction regulations, are unconstitutional. *See DeShields v. State,* 534 A.2d 630, 639 (Del.1987) (a constitutional question will not be decided unless it is essential to the disposition of the case).

We emphasize that this case does not implicate questions of whether probation officers can exercise the general constitutional power granted to police officers. The case is unique because: (i) the officers were on the premises with the consent of the property owner who was also subject to visitation as a probationer; (ii) the probation officers' contact with McAllister was non-confrontational until McAllister attempted to flee; and (iii) the probation officers possessed reliable and verified information about the alleged illegal activities of a probationer before confronting the probationer.

## IV.

■ McAllister also claims that Morehart's failure to administer *Miranda* warnings before questioning him required the suppression of his inculpatory statement admitting that the room was his. *Miranda* warnings are required only

where (1) questioning of a suspect rises to the level of interrogation and (2) the interrogation occurs while the suspect is either in "custody" or in a "custodial setting." *Marine v. State,* 607 A.2d 1185, 1192 (Del. 1992); *Miranda v. Arizona,* 384 U.S. 436, 460–461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, although a probationer does not lose the privilege against self-incrimination because he is on probation, the United States Supreme Court has refused to extend the requirement of *Miranda* warnings to interviews with probation officers. *Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). The Superior Court accordingly denied the motion to suppress, holding that McAllister was not in custody when initially questioned by Morehart. In reaching its decision, the Superior Court resolved certain credibility disputes in favor of the probation officers. Such determinations by the trial court are entitled to substantial deference upon review. *Schock v. Nash,* 732 A.2d 217, 224 (Del. 1999).

■ "In order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with formal arrest' to such an extent that he would not feel free to leave." *Torres v. State,* 608 A.2d 731 (Del.1992) (citations omitted). At the time McAllister made the incriminating statement, he was in his own home, to which he had come freely, there were no police officers present, the probation officers were not armed or blocking his exit in any way, and the questioning was direct and brief. Under these circumstances, we agree with the trial court that the situation did not approximate formal arrest and was limited to the inquiries permitted between a probation officer and a person subject to supervision.

## V.

■ Finally, McAllister objects to the introduction of Johnson's statement to Morehart acknowledging that the padlocked room belonged to McAllister. We review evidentiary decisions by the trial court under an abuse of discretion standard. *Jones v. State,* 798 A.2d 1013, 1016 (Del.2002).

■ Johnson was a reluctant State witness and, on direct examination, denied that McAllister had a key to the room. The State then asked Johnson, as permitted by 11 *Del. C.* § 3507, whether she had originally told Morehart that McAllister had a key to the bedroom. Johnson replied that she did not remember. Morehart was then called to the stand and questioned about what Johnson had told him. Morehart testified that Johnson stated that McAllister stayed in the padlocked room. McAllister objected because Johnson had been questioned only about possession of the key to the room, not its occupancy. The trial court withheld decision on the motion, giving the State an opportunity to recall Johnson to clarify. The State decided not to recall Johnson, however. Once the State indicated that it did not intend to recall Johnson, McAllister requested, and received, a curative instruction advising the jury to disregard any testimony that was the subject of a valid objection.

McAllister argues that this instruction was not specific enough to cure the error. The State argues that any error was harmless because the fact that McAllister stayed in the room had already been established by other testimony. We agree

that the trial court's instruction was sufficient to cure the defect and that, in any event, any error was harmless beyond a reasonable doubt because the evidence solicited was merely cumulative. *DeAngelo v. State,* 795 A.2d 667 (Del.2002).

The judgment of the Superior Court is AFFIRMED.