# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,     )
    )
    )
v.     )
    )     ID No. 1407023965
    )
DALE K. MCNEILL,     )
a.k.a. CHARLES DESHIELDS,     )
    )
Defendant.     )

Date Submitted: March 27, 2015
Date Decided: April 23, 2015

## OPINION

*Upon Defendant's Motion to Suppress*: **DENIED.**

Barzilai K. Axelrod, Deputy Attorney General, Wilmington, DE, Attorney for the State.

Joseph M. Leager, Jr., Esquire, Wilmington, DE, Attorney for the Defendant.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court is the defendant's Motion to Suppress. For the reasons that follow, the defendant's motion is **DENIED.**

# II. FACTS

Dale K. McNeill a.k.a. Charles Deshields ("Defendant") was arrested following an administrative search of his motel room. At the time of the search, the defendant was serving Level II probation under the supervision of the Delaware Department of Correction as a result of a 2013 conviction. As part of the defendant's "zero tolerance" probation conditions, he was required to report any change of residence within 72 hours to his supervising probation officer. The address of record that the defendant provided to Probation was The Harriet Tubman Safe House in Wilmington, Delaware.

On July 28, 2014, Senior Probation Officer William DuPont ("DuPont"), who is assigned to Operation Safe Streets ("Safe Streets"), a joint task force of New Castle County Police and Probation and Parole Officers, learned that the defendant was staying at The Dutch Inn Motel ("Dutch Inn") in New Castle County, Delaware. The guest registration for the Dutch Inn recorded that the defendant was staying there for seven days. The defendant was registered to check into Room 51 on July 22, 2014, and check-out on July 25, 2015. The defendant was also registered to check into Room 51 on July 25, 2014, and check-out on July

26, 2014. Finally, the defendant was registered to check into Room 11 on July 26, 2014, and check-out on July 29, 2014.

On July 29, 2014, a Safe Streets team went to the Dutch Inn with the purpose of ascertaining if the defendant was residing there. The Safe Streets team consisted of DuPont, Senior Probation Officer Richard Negley, Detective Thomas Bruhn of the New Castle County Police Department ("NCCPD"), and Officer Peter Stewart of the NCCPD.[1]

DuPont testified that, through his training and experience, he is aware that probationers often secure a motel room or maintain a separate residence than the residence provided to Probation in an effort to conceal illegal activities from Probation. DuPont also testified that probationers will often change motel rooms several times to further conceal any illegal activities.

DuPont and Detective Bruhn testified that the Dutch Inn is located in a well-known, high crime area. The Safe Streets team knew that the defendant had an extensive criminal record, including drug related crimes and violent arrests. When the officers arrived at the Dutch Inn on July 29, the officers noticed a rental vehicle parked in front of the defendant's room. DuPont testified that probationers often use rental vehicles in an effort to conceal their activities from Probation.

---

[1] DuPont and Detective Bruhn testified at the suppression hearing. Detective Bruhn testified that Safe Streets is designed to deal with some of the worst violent and repeat offenders, and one of his primary responsibilities as a member of Safe Streets and sworn officer of the NCCPD is to provide security and assist the Probation and Parole Officers.

At approximately 9:19 a.m., DuPont knocked on the door to Room 11. The defendant asked, "who is it?" DuPont identified himself as a Probation and Parole Safe Streets Officer and the defendant responded, "what do you want?" DuPont testified that he could see into Room 11 through a small four to six inch gap between the window and the curtain. DuPont told the defendant he wanted to talk, and the defendant said "okay." At this point, DuPont could still see the defendant standing inside the room and it appeared as if the defendant was unsure whether to open the door. The defendant then closed the curtains and the officers were no longer able to see the defendant. Upon further knocking, the defendant indicated that he was in the shower and said, "hold on, I have to get dressed."

Approximately one or two minutes later, after additional knocking, the defendant opened the door. DuPont did not use a key or otherwise force entry. Although the defendant indicated he could not answer the door immediately because he needed to get dressed, the defendant was fully naked when he let the officers into the room. Detective Bruhn did a protective sweep of the motel room to check if anyone else was in the room and did not find anyone. DuPont testified that immediately upon making contact with the defendant he observed that the defendant's clothes were readily accessible, he was not wet from a shower, and the bathroom did not appear to be wet. The defendant put on a pair of boxer shorts that he was holding in his hands.

4

DuPont asked the defendant why he was renting the room. The defendant told DuPont he was using the motel room for "relations with a companion." DuPont testified that he did not notice any female items in the room. DuPont then asked if the defendant had contacted Probation to report his change of address. According to DuPont, the defendant began to stutter and said, "I don't stay here like that." During this exchange, the defendant attempted to move closer to the bed and started to rifle through clothes on the bed. DuPont directed the defendant not to touch anything or make any movements.

DuPont testified that because of the defendant's behavior he was concerned for officer safety and did not want the defendant to stand. According to DuPont, the only place in the small motel room available to sit was on the bed or a chair. DuPont testified that based on his training and experience the chair provided less places to hide a weapon in comparison to the bed. Prior to asking the defendant to sit in the chair, Detective Bruhn checked the seat for the presence of weapons. He found no weapons under the seat cushion, but upon leaning the chair forward to look underneath, Detective Bruhn saw that the black mesh on the bottom of the chair had a large hole ripped in it. Detective Bruhn saw a log of heroin in that hole. The officers handcuffed the defendant and DuPont confirmed that Detective Bruhn had observed heroin.

DuPont obtained permission from Probation Supervisor Carlo Pini to conduct an administrative search of Room 11 and the rental vehicle that was parked outside. The search revealed additional drugs in Room 11 and in the rental vehicle.

## III. PARTIES' CONTENTIONS

The defendant moves to suppress all evidence seized following the search of his motel room and rental vehicle. The defendant argues that the probation officers lacked reasonable suspicion to conduct an administrative search for illegal contraband because the officers knew only that the defendant was on probation and had rented a room at the Dutch Inn. The defendant maintains that there were no exigent circumstances and the probation officers did not complete the required pre-search preparation checklist before going to the Dutch Inn.

In opposition, the State argues that the probation officers were permitted to knock on the defendant's motel room door and ask the defendant about his use of the Dutch Inn as a residence. Once lawfully in the defendant's motel room, the State argues that based on the defendant's behavior, the officers were permitted to do a protective search of the chair for weapons. The State maintains that the administrative search began after the drugs were observed in plain view and the defendant was handcuffed.

The State further argues that even if the administrative search was invalid, the contraband found in the defendant's motel room and rental vehicle "inevitably would have been discovered by lawful means" because the defendant was going to be arrested for violation of probation.

## IV. STANDARD OF REVIEW

On a motion to suppress evidence in a warrantless search or seizure, the State bears the burden of proof to establish that the challenged police conduct comported with the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[2] The burden of proof on a motion to suppress is proof by a preponderance of the evidence.[3]

## V. DISCUSSION

The Constitutions of the United States and the State of Delaware protect individuals against unreasonable searches and seizures.[4] Individuals on probation, however, "do not enjoy the absolute liberty to which every citizen is entitled."[5] A probationer's home is protected from unreasonable searches, but the "unique nature of probationary supervision justifies a departure from the usual warrant and

---

[2] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).
[3] *State v. Abel*, 2011 WL 5221276, at *2 (Del. Super. 2011), *aff'd*, 68 A.3d 1228 (Del. 2012), *as amended* (Jan. 22, 2013).
[4] U.S. CONST. amend IV, XIV; DEL. CONST. art. I, § 6.
[5] *McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)).

probable cause requirements for searches."[6]   The Delaware Supreme Court has

explained that:

> [A] warrantless administrative search of a probationer's home requires
> the probation officer have a reasonable suspicion for the search.
> Reasonable suspicion exists where the totality of the circumstances'
> indicates that the officer had a particularized and objective basis for
> suspecting legal wrongdoing.[7]

11 *Del. C.* § 4321(d)[8] authorizes Probation and Parole officers to effect

searches of probationers in accordance with Department of Correction ("DOC")

regulations.[9]   Pursuant to that authority, the DOC has adopted regulations

governing warrantless searches and arrests of probationers.[10]   Under Probation and

Parole Procedure 7.19 ("Procedure 7.19"):

> [P]robation officers may detain any positively identified probationer
> to determine the nature of his activity and whether he is complying
> with the conditions of probation. A detention means temporarily
> depriving a person of his freedom to depart the area based on
> reasonable suspicion.[11]

Probation officers are not required to fulfill each technical aspect of the

DOC regulations.[12]   "A probation officer must have a reasonable suspicion or

---

[6] *Jacklin v. State*, 2011 WL 809684, at *2 (Del. 2011) (TABLE).

[7] *Id.* (internal quotations omitted).

[8] 11 *Del. C.* § 4321(d) ("Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment . . . .").

[9] *McAllister*, 807 A.2d at 1123.

[10] *Jacklin*, 2011 WL 809684, at *2.

[11] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012), *as corrected* (July 10, 2012).

[12] *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).

reasonable grounds to justify an administrative search of a residence or car."[13] The Delaware Supreme Court considers probation officers to have acted reasonably so long as they substantially comply with the DOC regulations.[14] According to the Delaware Supreme Court:

> Generally, the following factors should be considered when deciding whether to search: [1] The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband; [2] The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole; [3] There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law; [4] The information from the informant is corroborated; [5] Approval for the search has been obtained from a Supervisor.[15]

In the present case, on July 29, 2014, the probation officers had a reasonable belief that the defendant was in violation of probation because the defendant was registered as a guest at the Dutch Inn for seven days and did not update his address to Probation. The probation officers also knew: (1) the defendant had a criminal history; (2) the Dutch Inn is located in a high drug and high crime area; (3) it is common for probationers to conceal a secondary residence from Probation to carry out illegal activities; (4) the defendant was staying at the Dutch Inn for seven days; (5) it is common for probationers to switch motel rooms multiple times to conceal illegal activities from Probation; (6) the defendant switched motel rooms three

---

[13] *Murray*, 45 A.3d at 678.
[14] *Id.*
[15] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008) (quoting Delaware Department of Correction Bureau of Community Corrections Probation and Parole Procedure No. 7 .19).

9

times during the seven day time period; (7) it is common for probationers to use a rental vehicle to conceal illegal activities from Probation; and (8) the defendant had a rental vehicle.

Once the probation officers were lawfully permitted to enter the defendant's motel room, the defendant told the probation officers that he was renting the room for "relations with a companion," but there was no one else in the room or any indication that another person had been there. During this conversation, the probation officers determined that the defendant lied about the reason for his delay in opening the door because the defendant's clothes were readily accessible but he was still naked, he was not wet from a shower, and the bathroom did not appear to be wet from a shower. Additionally, the defendant was nervous and rifling through his clothes on the bed. As noted above, the probation officers were concerned for officer safety and wanted the defendant to sit in the chair and not stand next to the bed. At this point, the probation officers conducted a limited protective search of the area within arm's reach of the chair and found drugs in plain view.

Under these circumstances, the Court finds that a protective search of the chair for weapons was justified for officer safety. Once the defendant was handcuffed, the probation officers obtained approval from a supervisor to conduct an administrative search of Room 11 and the rental vehicle.

10

The following pre-search considerations were present: (1) the officer had knowledge or sufficient reason to believe that the offender possessed contraband; (2) the officer had knowledge or sufficient reason to believe that the offender was in violation of probation or parole; and (3) approval for the search was obtained from a supervisor.[16] The Court finds that the probation officers had "reasonable suspicion" for the administrative search and substantially complied with the DOC regulations.

Moreover, pursuant to 11 *Del. C.* § 4334(b),[17] probation officers have statutory authority to arrest probationers for a violation of any condition of probation. Thus, on July 28, 2014, when the probation officers learned that the defendant was registered as a guest at the Dutch Inn from July 22 to July 29, 2014, and verified that the defendant had not updated his address, 11 *Del. C.* § 4334(b) authorized the probation officers to arrest the defendant without a warrant because the defendant violated the conditions of his probation.

---

[16] The remaining two pre-search considerations are irrelevant in the instant case because they concern whether a probation officer received corroborated information from an informant.

[17] 11 *Del. C.* § 4334(b) ("The Commissioner, or any probation officer, when in the Commissioner's or probation officer's judgment there has been a violation of any condition of probation or suspension of sentence, may arrest such probationer without a warrant . . . ."); *Jacklin*, 2011 WL 809684, at *3.

11

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

_____

Jan R. Jurden, President Judge