STREETT, J.
Introduction
Fidel Oseguera-Avila ("Defendant"), who was arrested for Driving Under the Influence, moves to suppress "all evidence of wrong doing;[1] or in the alternative, the results of' the Horizontal Gaze Nystagmus *1052 Test ("HGN"), Vertical Gaze Nystagmus Test ("VGN"), Walk and Turn Test, One-legged Stand Test, and Intoxilyzer Test.[2] He contends that the field sobriety tests were not administered in accordance with the standardized guidelines of the National Highway Traffic and Safety Administration ("NHTSA") and, as such, the trooper was without probable cause to take Defendant into custody or administer the Intoxilyzer test on him.
The State responds that the results of the HGN and Walk and Turn tests are admissible and that there was probable cause, even excluding the field sobriety tests, to arrest Defendant and to perform the Intoxilyzer test on him.[3]
The Court denies Defendant's Motion to Suppress.[4]
Factual and Procedural History
On May 6, 2018, at approximately 2:09 a.m., Trooper Alyssa Santangelo ("Trooper Santangelo") of the Delaware State Police was travelling north on Basin Road. There are two left turn lanes at the intersection of East Commons Boulevard. Trooper Santangelo entered the far left turn lane and observed Defendant in the other left turn lane (to the right of Trooper Santangelo). Defendant was stopped at a green light with his right turn signal on. When the light turned red, Defendant, with his right turn signal still on, turned left in front of Trooper Santangelo. Defendant then drove the wrong way down a one-way road. Trooper Santangelo followed Defendant's car, turned on her emergency lights, and pulled Defendant over. Defendant stopped directly in front of a do-not-enter sign.
Trooper Santangelo approached the open passenger side window[5] and smelled a strong odor of alcohol coming from the vehicle at a distance of approximately five feet. Defendant was the operator of the vehicle.[6] Trooper Santangelo testified that Defendant admitted to having had one beer. Trooper Santangelo observed that Defendant had a strong odor of alcohol; dazed, glassy, dilated, and watery eyes; and that he hesitated when answering questions. Trooper Santangelo asked Defendant to exit the vehicle. Defendant complied and put his hands on the vehicle.
Trooper Santangelo next asked Defendant if he would consent to perform field sobriety tests. Defendant responded that he would do anything she wanted. Trooper Santangelo then administered the HGN, VGN, Walk and Turn, and One-legged Stand tests on Defendant. Trooper Santangelo completed the HGN test in 82 seconds. Trooper Santangelo testified that she observed all six HGN test clues for impairment. The HGN test was immediately followed by the VGN test in 13 seconds.[7] Trooper Santangelo then explained and demonstrated the Walk and Turn test to Defendant.[8] Trooper Santangelo testified *1053 that Defendant exhibited six clues that showed impairment during the Walk and Turn test. Trooper Santangelo then explained the One-legged Stand test to Defendant. Trooper Santangelo gave Defendant multiple opportunities to perform the test and Defendant attempted to perform the test but could not. Defendant appeared to be confused, had trouble keeping his balance, at first could not lift his foot off the ground, eventually lifted it off the ground for two seconds and put it back down, stated that he was 50 years old but gave no indication of a physical injury or disability, and stated that he was hot.
A suppression hearing was held on October 26, 2018. Trooper Santangelo was the only witness. In addition to testifying to the above events, Trooper Santangelo testified that she formed the opinion that Defendant was impaired because he committed multiple traffic violations; had a strong odor of alcohol; and had dazed, watery, and dilated eyes. Also, his face was flushed and he had slurred speech, trouble keeping his balance, was confused, and failed the field sobriety tests.
Trooper Santangelo then arrested Defendant for Driving Under the Influence of Alcohol and transported him to Troop 2 where she administered the Intoxilyzer test on him.[9] The Intoxilyzer test results showed a BAC reading of 0.142%.
Parties Contentions
Defendant contends that the results of the field sobriety tests ("the Tests") should be suppressed because the tests were not administered in accordance with NHTSA guidelines.[10] Defendant posits that there was insufficient evidence to arrest Defendant and to administer the Intoxilyzer test on him because the results of the field tests were improperly administered. As such, Defendant asserts that the results of the Intoxilyzer test should be suppressed.
Specifically, Defendant claims that the HGN test was not administered correctly because Trooper Santangelo "never asked Defendant about eye problems or eye abnormalities" and she administered the HGN in approximately 80 seconds when "the HGN cannot be administered in less than 96 seconds."[11] Defendant asserts that the VGN test results are not valid because Trooper Santangelo "did not hold the stimulus in a maximum elevated position for at least four seconds as required by NHTSA."[12]
Defendant claims that the Walk and Turn test also was not correctly administered because Trooper Santangelo "never asked Defendant whether or not he had any physical problems or disability" and "never instructed Defendant not to start the test until he was told to do so - [both] NHTSA requirement[s]."[13]
Lastly, Defendant argues that the One-legged Stand test was not administered correctly because Trooper Santangelo never asked Defendant if he had any physical *1054 problems or disabilities, did not instruct Defendant to hold his foot six inches off the ground, did not instruct Defendant to hold his foot parallel with the ground, and did not instruct Defendant to keep his eyes on his foot - as outlined by NHTSA.
The State responds that the results of the HGN test and the Walk and Turn test should not be suppressed.[14] The State argues that the HGN test was administered in accordance with NHTSA. It points out that "as reflected in the motor vehicle recording (MVR), Tpr. Sanatangelo [sic] asks Defendant if he wears contacts or has eye problems prior to beginning the Nystagmus tests."[15] The State further explains that the NHTSA manual does not provide an exact 96 second requirement.[16]
The State also argues that although the trooper did not ask Defendant whether he had any physical problems or disabilities prior to administering the Walk and Turn test, the Delaware Superior Court has held that such an omission does not invalidate the test. Citing State v. Hudgins ,[17] the State writes that the Delaware Superior Court did not disqualify similar field tests even though the police failed to ask whether the defendant had a physical injury. The Court stated that:
[A]lthough Defense raises the issue of the Officer's failure to ask Defendant if he had any disabilities that would preclude him from successfully completing the test, the Defense is not asserting that the Defendant actually had any disability, nor any reason to improperly perform.... Here, the Court does not find that any deficiency in the testing of the Defendant is enough to disqualify the tests entirely.[18]
As to the claim that Trooper Santangelo failed to notify Defendant to wait until instructed before attempting the Walk and Turn test, the State explains that Trooper Santangelo is seen and heard on the MVR "instructing Defendant to remain stationary as she explains and demonstrates how to complete the test."[19] The State then notes that "[a]fter asking Defendant if he understood her instructions, Trooper Santangelo then switches positions with Defendant and instructs him to begin the test."[20] Thus, the State argues, "[t]here is no question that Defendant clearly understood Trooper's instruction to wait to begin the test, he did not begin prematurely, and he exhibited 6 clues [of impairment] after he began the test, none of which were related to when he began the test."[21]
Lastly, the State contends that, even without considering the results of the field tests, there was ample evidence for "probable cause to arrest Defendant and to believe that further evidence of DUI would be detected by an Intoxilyzer Test."[22] The State cites Bease v. State[23] to support its claim that there was probable cause to arrest Defendant on evidence other than that obtained through the field sobriety tests. In Bease v. State , the Delaware Supreme Court found probable cause to arrest *1055 the defendant where he "spoke in a rapid manner ..., smelled of alcohol, admitted that he consumed alcoholic beverages the night before, had bloodshot and glassy eyes, and had just committed a traffic violation by making an improper lane change in an abrupt manner."[24] The State argues that the facts in the instant case are similar to those in Bease v. State.
Standard of Review
On a motion to suppress, the defendant bears the burden of establishing that the challenged search or seizure violated his rights under the United States Constitution, the Delaware Constitution, or the Delaware Code.[25] If the defendant establishes a basis for the motion, the State must then prove, by a preponderance of the evidence, that "the challenged search or seizure comported with the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law."[26] As the trier of fact at a suppression hearing, the Court determines the credibility of the witnesses.[27]
Discussion
For the following reasons, the Court denies Defendant's Motion to Suppress the results of the HGN, Walk and Turn, and Intoxylizer tests even though the Court finds that the results of the VGN and One-legged Stand tests were improperly administered.
As to the HGN test, Defendant first contends that the HGN test was incorrectly administered because the trooper did not ask "Defendant about eye problems or eye abnormalities."[28] Defendant asserts that this question is "a NHTSA requirement."[29] Here, the trooper can be heard on the MVR asking Defendant "do you have any...um ... contacts or anything, any like eye issues, anything like that?"[30] An inquiry concerning "eye issues" encompasses eye problems or abnormalities. Furthermore, there is nothing in the record supporting an argument that the manual states that exact language is required.
Defendant also argues that the HGN test was invalid because the entire test must not be conducted in less than 96 seconds. Although the manual does not state how long the entire HGN test should take, the Defense claims that the sum of the individual time measurements provided in the instructions for each of the four sequences of the HGN test (Equal Tracking, Smooth Pursuit, Distinct and Sustained Nystagmus at Maximum Deviation, and Onset of Nystagmus Prior to 45 Degrees) must be at least 96 seconds.
However, a thorough and accurate reading of the NHTSA instructions shows that there is no standard minimum time limit. Indeed, three of the four sequences reference approximate time measurements.[31]
*1056 As such, when the word "approximately"[32] is used to qualify several time measurements in the instructions for different phases of the HGN test, it is not possible to establish a strict minimum time for completing the test and Defendant's insistence that the test cannot be less than 96 seconds is misplaced.
In State v. Dale[33] the Delaware Superior Court provides guidance on how the Court is to decide whether an HGN test was conducted within a sufficient amount of time. In that case, the officer testified that the HGN test "should normally take approximately ninety seconds to complete," but the officer had completed the test within 55 seconds.[34] The Court found that the test conducted was "not normal."[35] However, the Court stated that such a large deviation from what is normal "does not mean that the Court is required to disregard the HGN test, [it] go[es] to the weight of the evidence."[36] Ultimately, in that case, the Court disregarded the HGN test because it was performed in poor lighting and significantly faster than what the officer conducting the test considered to be normal.
Here, Defendant has not claimed that the HGN test was conducted in poor lighting (and the MVR shows adequate lighting), the trooper asked Defendant if he wore contact lenses or had any eye issues, the trooper told Defendant not to move his head, the trooper continued to instruct Defendant throughout the test, and the trooper administered the test in 82 seconds. In view of the fact that the manual's time measurements are approximations, 82 seconds is not significantly shorter than the 96-second minimum period exacted by the Defense. After weighing the evidence, the Court finds that the HGN test should not be suppressed.
Next, Defendant claims that the VGN test (that was administered immediately after the HGN test) was also invalid because Trooper Santangelo did not "hold the stimulus in a maximum elevated position for at least four seconds."[37] Unlike the HGN instructions, the NHTSA manual does specify that the time measurement provided for the VGN should be a minimum of four seconds. Trooper Santangelo testified that she did not know how long she performed the VGN technique and the State does not dispute that the VGN was administered incorrectly. As such, the VGN test results will be suppressed.
Defendant then criticizes the Walk and Turn test and contends that the results should not be admitted because the trooper did not ask Defendant whether he had any physical problems or disabilities as required by NHTSA. While it is true that the trooper failed to ask Defendant whether he had any physical problems or disabilities, that is not an automatic disqualifier.
In State v. Hudgins , the Delaware Superior Court suggests that the failure to ask whether a defendant has any physical *1057 problems or disabilities does not in itself disqualify a field test where the defendant has not asserted that any physical problems or disabilities prevented satisfactory execution of the test.[38] The Court stated that "although the Defense raises the issue of the Officer's failure to ask Defendant if he had any disabilities that would preclude him from successfully completing the test, the Defense is not asserting that the Defendant actually had any disability, nor any reason to improperly perform."[39] The Court ruled that the "deficiency in the testing of the Defendant [was not enough] to disqualify the tests entirely."[40]
Moreover, in State v. Dale , the Delaware Superior Court held that "[n]otwithstanding that field sobriety tests must be administered in strict compliance with standardized procedures, no Court in this jurisdiction ha[s] concluded that a failure to strictly comply with NHTSA invalidates the test."[41] The Court explained that its "role is to take note of the deficiencies in the administration of the sobriety test when giving weight and value to the tests performed."[42]
Thus, the fact that the trooper did not ask Defendant whether he had any physical problems or disabilities does not invalidate the Walk and Turn test. The trooper carefully explained the Walk and Turn test to Defendant, Defendant had ample opportunity to inform the trooper if he had any physical problems or disabilities,[43] Defendant attempted to follow the trooper's instructions, and Defendant is not asserting that he had any physical problems or disabilities that prevented him from performing the test properly. Therefore, after taking note of the deficiency and weighing the value of the test, the Court finds that the deficiency does not invalidate the test results.
Defendant also argues that the Walk and Turn test was incorrectly administered because Trooper Santangelo did not instruct Defendant to wait for the officer to tell him when to begin the test. However, the MVR shows that Trooper Santangelo instructed Defendant to hold his position as she gave him instructions and demonstrated the test, Defendant did not begin the test prematurely, and Trooper Santangelo informed Defendant when to begin the test. Defendant's claim is without merit and the results of the Walk and Turn test will not be suppressed.
As to the One-legged Stand test, Defendant contends that it was not properly administered. The Court finds that the One-legged Stand test was not administered because Defendant was unable to perform the test. Therefore, although Defendant's behavior during the attempted administration of the One-legged Stand test is admissible as indicia of impairment, this Court will disregard the results of the One-legged Stand test.
Lastly, Defendant moves to suppress the Intoxilyzer test results. Defendant asserts that there was insufficient evidence to establish probable cause for his arrest and for subsequently administering the Intoxilyzer test because the field sobriety tests were not administered correctly. Although this Court finds that the HGN and Walk and Turn tests were administered properly (and there were sufficient *1058 indicia of impairment), it also finds that Trooper Santangelo had probable cause to arrest Defendant even when not factoring in the results of those tests. The fact that Defendant failed the valid HGN and Walk and Turn tests merely provided additional evidence for probable cause.
Under Delaware case law, even if the field sobriety tests results had been excluded, there was still sufficient evidence for the trooper to arrest Defendant and administer the Intoxilyzer test. In Bease v. State[44] the Delaware Supreme Court found that probable cause existed even if excluding the field sobriety tests. It held:
Even excluding the failed PBT and HGN testing results, the record reflects sufficient other evidence to establish probable cause for the administration of the intoxilyzer test and to admit the presumptive intoxication evidence disclosed by that scientific testing. The record reflects that Bease spoke in a rapid manner to Trooper Penrod, smelled of alcohol, admitted that he consumed alcoholic beverages the night before, had bloodshot and glassy eyes, and had just committed a traffic violation by making an improper lane change in an abrupt manner.[45]
So too, the Delaware Superior Court in State v. Iyer[46] affirmed the Court of Common Pleas' decision to exclude field sobriety tests but still find probable cause to arrest:
In this case, Defendant's watery and glassy eyes, odor of alcohol, admission to drinking alcohol, and involvement in a single vehicle accident are facts that are sufficient in themselves to warrant a [person] of reasonable caution to believe that Defendant was driving under the influence of alcohol at the time of the accident.[47]
Contrastingly, there may be combinations of indicators that do not provide sufficient evidence to arrest for DUI. For example, in State v. Mulhollana[48] "minor weaving within lanes, odor of alcohol, bloodshot eyes at midnight, and admission to drinking at a funeral earlier in the day"[49] was insufficient. In State v. Dale[50] an inside-out, backward shirt and a moderate smell of alcohol were not enough. These cases noted that sufficiency would have been established if there were "something more,"[51] Something more could be a flushed face; failing an alphabet test; aggressive or erratic driving; fumbling when retrieving license, registration, and proof of insurance; and an uncooperative or argumentative attitude.
As such, the instant case is distinguishable from State v. Mulholland and State v. Dale. Here, Defendant committed multiple traffic violations (wrong turn lane, wrong turn signal, proceeding through a red light, wrong way on a one-way road); the trooper detected a strong odor of alcohol emanating from Defendant and Defendant's car while standing five feet from the vehicle; the trooper described Defendant's eyes as glassy, watery, and dazed; and Defendant's demeanor was confused.[52]
*1059 Also, Defendant gave evasive answers;[53] Defendant had trouble standing and keeping his balance; and Defendant admitted to drinking. Additionally, Defendant had a flushed face, exhibited slurred speech, and staggered.[54]
Although some of the field sobriety tests were flawed, this Court finds that Defendant's erratic driving; multiple traffic violations; the strong odor of alcohol; dazed, glassy, and watery eyes; slurred speech; flushed face; evasive answers; unsteadiness on his feet; and acknowledgement that he had been drinking established sufficient evidence for probable cause to arrest Defendant for DUI. Therefore, the results of the Intoxilyzer test are admissible even when not considering the results of the field sobriety tests.
Conclusion
Accordingly, for the foregoing reasons, Defendant's Motion to Suppress is DENIED.
IT IS SO ORDERED.

Although Defendant seeks to suppress "all evidence of wrong doing," the Defense only addressed the field sobriety tests and Intoxilyzer test at the suppression hearing and at argument and did not argue against admission of Defendant's several motor vehicle offenses.

Defendant's Motion to Suppress, at 1.

The Defense acknowledges that probable cause can be found irrespective of the field tests if there are enough other strong indicators of impairment.

While the Motion to Suppress is denied, the Court finds that two of the field sobriety tests were not correctly administered and are suppressed.

Trooper Santangelo's partner also approached the vehicle, briefly went to the driver's side, and then also went to the passenger side.

There was a passenger in the front passenger seat.

The record does not indicate whether any clues were exhibited during the VGN test.

Trooper Santangelo instructed Defendant to take nine steps heel to toe and then to take a series of small steps and go nine steps back the other way, keep his arms at his sides, look down at his feet, and count out loud. As she was instructing Defendant, she physically demonstrated how to take the test. Motor Vehicle Recording ("MVR") at 02:21:28 a.m.

Trooper Santangelo stated in her affidavit for the arrest warrant that she started the observation period at 0300 hours and began the test at 0324 hours.

The Defense extensively cross-examined Trooper Santangelo about specific passages in the NHTSA manual. The entire NHTSE manual was marked as a Court exhibit solely to identify specific passages referenced during the hearing.

Defendant's Motion to Suppress, at 2.

Id.

Id. at 2-3.

The State did not respond to Defendant's claims regarding the VGN and One-legged Stand tests.

State's Response, at 3-4.

Id. at 4.

State v. Hudgins , 2015 WL 511422 (Del. Super. Jan. 16, 2015).

Id. at *3.

State's Response, at 5.

Id.

Id. at 6.

Id. at 7.

Bease v. State , 884 A.2d 495 (Del. 2005).

State's Response, at 6 (quoting Bease v. State , at 498 ).

State v. McElderry , 2018 WL 4771786, at *2 (Del. Super. Oct. 1, 2018).

Id.

State v. Brinkley , 2013 WL 1225869, at *2 (Del. Super. Feb. 19, 2013).

Defendant's Motion to Suppress, at 2.

Id.

MVR at 02:18:55 a.m.

The manual says that when checking for Smooth Pursuit the speed of the stimulus movement from the center of the face to the side of the eye should take "approximately 2 seconds" and that the Equal Tracking process should be "approximately the same speed" as used to check for Smooth Pursuit. Moreover, for the Onset of Nystagmus Prior to 45 Degrees process the manual instructs to move the stimulus at a speed of "approximately 4 seconds." Each of these movements are to be performed twice for both sides of each eye. See Defendant's Motion to Suppress, Exhibit A, DWI Detection and Standardized Field Sobriety Testing , (Feb. 2018), Instructor Guide, at Session 8, page 34-35, 37-38, 41, 43, 45-46, 51. [Emphasis supplied]

Id.

State v. Dale , 2016 WL 691445 (Del. Super. Feb. 11, 2016).

Id. at *3.

Id.

Id.

Defendant's Motion to Suppress, at 2.

State v. Hudgins , *3.

Id.

Id.

State v. Dale , at *3.

Id.

Although Defendant can be heard informing the trooper that he was 50 years old, Defendant is not asserting this as a disability.

Bease v. State , 884 A.2d 495 (Del. 2005).

Id. at 499.

State v. Iyer , 2011 WL 976480 (Del. Super. Feb. 23, 2011).

Id. at *13

State v. Mulholland , 2013 WL 3131642 (Del. Com. Pl. June 14, 2013).

Id. at *5.

State v. Dale , 2016 WL 691445 (Del. Super. Feb. 11, 2016).

State v. Mulholland , at *5.

Although Defendant's first language appears to be Spanish, it does not appear as though a language barrier was the source of confusion. The MVR showed that Defendant appropriately answered in English to questions posed to him in English and volunteered extraneous information in English.

Defendant made gratuitous comments about a brother.

The MVR shows that Defendant was unsteady on his feet throughout the entire encounter. However, the Court does not find that Defendant's placement of his hands on his vehicle and adopting a pat down stance upon exit was one of the indicia of staggering.