# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ID No. 2501009987 |
| | ) | |
| **JEFFREY CHANDLER**, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: November 20, 2025
Decided: January 9, 2026

## <u>OPINION AND ORDER</u>

*On Defendant's Motion to Suppress*

## DENIED

*William H. Leonard, Deputy Attorney General*, Attorney General's Office, 820 N. French Street, 7th floor, Wilmington, Delaware, *Attorney for Plaintiff.*

*Matthew Keating, Assistant Public Defender,* Office of Defense Services, 820 N. French Street, 3rd floor, Wilmington, Delaware, *Attorney for Defendant*

**Jones, J.**

Jeffrey Chandler challenges the warrant obtained to draw his blood following a traffic accident that occurred on January 24, 2025, at approximately 6:45 p.m. in the area of I-95 Southbound near Route 1.  Defendant maintains that the affidavit of probable cause failed to contain sufficient probable cause to justify the issuance of the search warrant to draw the defendant's blood.

Trooper Barry of the Delaware State Police was the investigating officer and completed the affidavit of probable cause.  The affidavit provided the following:

> 1.     On 1/24/2025 at approximately 1845 hours, I was dispatched to I-95 southbound in the area of SR-1 in reference to a motor vehicle collision involving 2 vehicle collision involving 2 vehicles. Upon arrival, I made contact with the operator of non-striking vehicle and obtained his statement. The operator stated he was traveling southbound on I-95 when he was suddenly struck by a sedan. The operator stated after being struck by the sedan, same drifted off the roadway into a ditch.
>
> 2.     I then responded to the ditch area to search for the sedan. Upon searching for same, I observed a tan Toyota Camry with front center damage in the ditch. The operator of the non-striking vehicle confirmed this was the vehicle that struck him. Inside the Toyota Camry was unconscious black male subject seated in the driver seat.
>
> 3.     I attempted to alert the operator in the vehicle by loudly knocking on both the passenger and driver side window however was unsuccessful in waking him up. I opened the driver side door which ultimately awoke the operator. I questioned the operator on what occurred however he was unable to provide me with a clear statement due to him going in and out of consciousness.
>
> 4.     The operator was instructed to step out of his vehicle and speak with me. The operator stepped out and continued to advise to me that he was struck by the non-striking vehicle. The operator later provided me with his identification information where he

was also identified through computer inquires as Jeffrey Chandler. BMN – DOB-09/28/1966. While speaking Mr. Chandler, his speech was very slurred and his eyes were extremely bloodshot. I could also smell the odor of an alcoholic beverage coming from his breath.

5.      While observing Mr. Chandler, it appeared his shorts were soiled right around his crotch area. I also observed Mr. Chandler stumble when instruced (sic) to walk toward my patrol vehicle. I was unable to perform any field sobriety tests on scene due to Mr. Chandler complaining of a minor head injury suffered from the collision. EMS later responded to the area and transported Mr. Chandler to the Christiana Hospital.

6.      Based on my training and the results of this investigation I believe Mr. Chandler was operating the vehicle while under the influence alcohol. I pray that a search warrant be approved on the aforementioned probable cause to obtain a blood sample from Mr. Chandler for the purpose of determining her intoxication.

"The Fourth Amendment protects against unreasonable searches and seizures and provides that warrants cannot issue absent a showing of probable cause supported by oath or affirmation."[1]  Additionally, "the Delaware Constitution also safeguards the right to be free from unreasonable searches and seizures and requires that warrants be based upon a sworn statement establishing probable cause."[2]

"The Delaware General Assembly codified the requirements for a constitutionally adequate showing of probable cause in [11 *Del. C.*] §§ 2306 and 2307" (hereinafter "Section 2306" or "Section 2307").[3]  Section 2306 outlines the

---

[1] *State v. Cannon*, 2007 WL 1849022, at *3 (Del. Super. Ct. June 27, 2007); *see also* U.S. Const. amend. IV.
[2] *Cannon*, 2007 WL 1849022, at *3; *see also* Del. Const. art. I, § 6.
[3] *Cannon*, 2007 WL 1849022, at *3.

required content of the affidavit in support of the search warrant:

> It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.[4]

Any judicial officer issuing a search warrant must adhere to both the procedural and substantive requirements delineated in Section 2307:

> If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible.[5]

"The specific statutory provisions of Sections 2306 and 2307 were enacted to enhance and elucidate the Federal and State constitutional safeguards against unreasonable searches and seizures."[6]

"Delaware courts have interpreted Sections 2306 and 2307 as imposing a four corners test for probable cause."[7]  In *State v. Cannon*, this court explained the four

---

[4] 11 *Del. C.* §2306.
[5] 11 *Del. C.* §2307(a).
[6] *Cannon*, 2007 WL 1849022, at *3 (Del. Super. Ct. June 27, 2007) (citing *State v. Church*, 2002 WL 31840887, at *4 (Del. Super. Ct. Dec. 18, 2002)).
[7] *Id*. *See also,* e.g., *Pierson v. State*, 338 A.2d 571, 573-74 (Del. 1975); *State v. Ivins*, 2004 WL 1172351, at *4 (Del. Super. Ct. May 21, 2004).

corners evaluation in detail:

> The facts alleged in the affidavit must suffice to allow the issuing magistrate to independently evaluate the existence of probable cause. The face of the affidavit must present adequate facts to allow a reasonable person to conclude that an offense has been committed and that seizable property would be found in a particular place or on a particular person. By requiring all facts relied upon by the magistrate to be contained within the written affidavit, the four corners test ensures that the reviewing court can determine the warrant's validity without "reliance upon faded and often confused memories."
>
> The four corners test restricts the scope of a reviewing court's inquiry, but does not constrain the court from adopting a flexible, nontechnical approach in evaluating a warrant's validity. The reviewing court's task is to determine whether the warrant application presented the issuing magistrate with a "substantial basis" to conclude that probable cause existed. In making this determination, the reviewing court takes a deferential approach to the magistrate's decision and eschews "a hyper-technical approach to the evaluation of the search warrant affidavit in favor of a common-sense interpretation." The affidavit must be "considered as a whole and not on the basis of separate allegations."[8]

Blood tests that determine the presence of alcohol "may be performed 'when an officer has probable cause to believe [a] person was driving, operating or in physical control of a vehicle in violation of §4177....' *Inter alia,* while under the influence of alcohol."[9]

---

[8] *Cannon*, 2007 WL 1849022, at *3 (citations omitted).
[9] *State v. Maxwell*, 624 A.2d 926 (Del. 1993) (citing 21 *Del.C.* §2740(a)).

Delaware Courts have acknowledged certain factors as supportive of probable cause, including a defendant's (1) traffic violation;[10] (2) bloodshot, glassy eyes;[11] (3) odor of alcohol;[12] and (4) slurred speech.[13]

Defendant maintains that the affidavit is lacking because (1) the statements were conclusory about whether Defendant was at fault for the accident, and (2) the trooper failed to outline his investigative measure demonstrating probable cause that the defendant was driving under the influence. Defendant cites to the decisions in *Esham v. Voshell*,[14] *Valentine v. State*,[15] and *State v. White*[16] in support of his positions.

I find that the affidavit contains sufficient probable cause to justify the drawing of Defendant's blood. Trooper Barry was dispatched to I-95 southbound in the area of SR-1 regarding a motor vehicle collision involving two vehicles. He made contact with one of the drivers who reported he was suddenly struck by a sedan while on I-95 and same drifted off the roadway into a ditch. The Trooper discovered Defendant in the driver seat of his car in the I-95 median, unconscious and with front end damage to his vehicle. The other driver confirmed that Defendant had struck his car.

---

[10] *Bease v. State*, 884 A.2d 495, 499-500 (Del. 2005).
[11] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).
[12] *Id.*
[13] *Maulo v. State*, 2011 WL 3849498, at *3 (August 30, 2011).
[14] *Esham v. Voshell*, 1987 WL 8277 (Del. Super. Ct. Mar. 2, 1987).
[15] *Valentine v. State*, 207 A.3d 566 (Del. 2019).
[16] *State v. White*, 2010 WL 369354 (Del. Super. Ct. Feb. 2, 2010).

Trooper Barry had difficulty rousing Defendant from unconsciousness by loudly knocking on the windows of both sides of the vehicle. Once awakened, Defendant could not give a coherent statement as he was going in and out of consciousness repeatedly. While interacting with the defendant after he regained consciousness, Trooper Barry observed that Defendant: had very slurred speech; had extremely bloodshot eyes; an odor of alcoholic beverage was coming from his breath, the defendant's shorts were soiled right around his crotch area; and the defendant was stumbling when he walked about to the Trooper's patrol car. I reject the argument that a finding of fault for the accident on Defendant's part is necessary for a finding of probable cause.

The totality of these facts and circumstances was sufficient for the magistrate to conclude that there was reasonable belief a crime had been committed, and that evidence of said crime could be obtained in a search. Namely, that the defendant was under the influence of alcohol and evidence of same would be found within the Defendant's blood.

Defendant's reliance on *Esham v. Voshell* is misplaced. In *Esham*, the evidence of impairment was speeding and the order of alcohol.[17] In the instant case, there is not only evidence of a traffic violation and the odor of alcohol, but there were also bloodshot eyes, soiling around Defendant's crotch area and the defendant

---

[17] *Esham*, 1987 WL 8277, at *2.

was observed stumbling as he walked to the Trooper's car. The decisions in *Valentine v. State* and *State v. White* are equally unavailing. *Valentine* involved conclusory statements regarding a confidential informant.[18] The instant situation does not involve a confidential informant. Further, the trooper's statements in his affidavit are not merely conclusory but involve factual findings based on his own observations as the scene. *State v. White* does not compel a different result because *White* concerned an affidavit that left more questions than answers[19] as opposed to the present affidavit which clearly lays out the basis for the Trooper's conclusions of impairment.

This case is more akin to the decision in *State v. Oseguera-Avila*[20] than the cases relied upon by the defendant.

In *State v. Oseguera-Avila*, this court held probable cause to arrest for a DUI existed after the Defendant drove erratically, committed multiple traffic infractions, had dazed, glassy, and watery eyes, slurred his speech, had a strong odor of alcohol, had a flushed face, provided evasive answers to the officers, was unsteady on his feet, and acknowledged he had been drinking earlier in the day. Many of these same facts are present in the instant case, in addition to other DUI indicators.[21] Here, Defendant 1) likely committed a traffic violation (was involved in a car accident and the other driver

---

[18] *Valentine*, 207 A.3d at 572.
[19] *White*, 2010 WL 369354, at *3 ("The affidavit is most striking for all the information it does not contain.").
[20] *State v. Oseguera-Avila*, 197 A.3d 1050 (Del. Super. Ct. 2018).
[21] *Oseguera-Avila*, 197 A.3d at 1059.

told the officer Defendant hit him); 2) exhibited slurred speech; 3) smelled of alcohol; 4) had issues with balance; 5) had trouble answering questions; 6) had bloodshot eyes; 7) had soiled himself around his crotch area; and 8) had passed out behind the wheel of the car and needed the officer to awake him.

For the stated reasons Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:    Original to Prothonotary