IN THE SUPREME COURT OF THE STATE OF DELAWARE

LAMONT VALENTINE, §
§ No. 17, 2018
 Defendant Below, §
 Appellant, § Court Below—Superior Court
§ State of Delaware
  v. §
§ Cr. ID No. N1603023004
STATE OF DELAWARE, §
§
 Plaintiff Below, §
 Appellee. §

Submitted: January 9, 2019
Decided:  March 20, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.  **REVERSED AND REMANDED**.


Benjamin S. Gifford, IV, Esquire, Wilmington, Delaware for Appellant Lamont Valentine.

Brian L. Arban, Esquire, Department of Justice, Wilmington, Delaware for Appellee State of Delaware.

**TRAYNOR,** Justice:

Based upon an informant's tip and some largely unproductive surveillance activity, two Wilmington police detectives applied for a warrant to search Lamont Valentine's apartment and automobile for evidence that Valentine, a convicted violent felon, was in possession of a firearm or ammunition. A magistrate issued the warrant, and when the officers conducted the search, they found marijuana, drug paraphernalia, and ammunition in the apartment and a firearm in the vehicle. These discoveries and other information provided by another resident of the apartment building resulted in numerous criminal charges against Valentine, including possession of a firearm by a person prohibited, drug dealing, aggravated possession of marijuana, terroristic threatening, and conspiracy.[1]

Valentine moved to suppress the fruits of the search on the grounds that the warrant affidavit and application did not establish probable cause that he had committed or was committing the offense of unlawfully possessing a firearm or that evidence of that crime was likely to be found in his apartment or car. The Superior Court denied the motion, and Valentine was eventually convicted of drug dealing, aggravated possession of marijuana, possession of drug paraphernalia, and

---

[1] The jury was unable to reach a unanimous verdict on the charges of possession of a firearm by a person prohibited and carrying a concealed deadly weapon, and the State entered a *nolle prosequi* on these charges. Valentine was acquitted of terroristic threatening and conspiracy. App. to Op. Br. A6–7 (hereinafter, "A__").

2

endangering the welfare of a child.[2]  Valentine was sentenced to six years of Level V incarceration, suspended for 18 months of Level III probation.[3]  He then filed this appeal, which is confined to the Superior Court's denial of his suppression motion.[4]

We agree with Valentine that the warrant application was insufficient to support a finding of probable cause that he had committed or was committing the crime identified in the warrant—possession of a firearm by a person convicted of a violent crime felony—or that a firearm was in his apartment or car.  Accordingly, Valentine's convictions must be reversed.

## I. FACTS

During the first week of March 2016, a confidential informant told Wilmington Police Department detectives that she[5] "had information [that Valentine] was in possession of illegal narcotics and a handgun, [which were] kept inside his residence . . . [at] 2901 Broom Street, Apartment 4"[6] in Wilmington.  A couple weeks later, Valentine, who had been convicted of a felony drug offense in Pennsylvania in 2009, was arrested and charged with possession of a firearm by a person prohibited

---

[2] *Id.* at A10–16.

[3] At the same sentencing hearing, Valentine was sentenced to 10 years of Level V incarceration for the possession of a firearm by a person prohibited charge arising out of his March 19 arrest, which is described below.

[4] *Id.* at A428–29.

[5] In their search warrant affidavit, the officers were careful not to disclose the gender of the informant to whom we have randomly ascribed the feminine gender in this opinion.

[6] A47.

after the Delaware State Police stopped a car Valentine was driving and found a weapon in the car.

During the third week of March, the detectives began surveillance of Valentine's Broom Street apartment. Beyond seeing Valentine leave the building and climb into a Dodge Challenger, it does not appear as though the detectives saw much of interest during the first week of surveillance. At some unidentified time during the next week—that is, the second week of surveillance and now the fourth week of March—the detectives observed Valentine meeting and exchanging a duffle bag with an unidentified male outside the building. So far as we know, this encounter was the only arguably suspicious behavior witnessed by the detectives during the entire surveillance period.

On March 30, a woman who lives in the Broom Street apartment building and who also provides cleaning services there made a terroristic-threatening complaint against Valentine. Although the record is murky on this point, it appears as though Valentine may have believed that the woman had stolen some of his money and had demanded that she return it. In her report to the police, the woman described Valentine as a known drug dealer.

On these facts and on the same day as this terroristic-threatening complaint, the detectives applied for a warrant to search Valentine's Broom Street apartment and his Dodge Challenger for firearms and documents tending to show that Valentine

lived in the Broom Street apartment. A magistrate issued the warrant, which the detectives promptly executed, finding cash on Valentine's person, ammunition, marijuana, and drug paraphernalia in his apartment, and a loaded handgun in his car.

Valentine moved to suppress the evidence seized from his apartment and car on the grounds that the detectives' search warrant affidavit did not set forth sufficient facts within its four corners from which the magistrate could conclude that probable cause for the searches existed. The State countered—and the Superior Court agreed—that, reviewing the totality of the circumstances, including the informant's tip, Valentine's March 19 arrest and his past criminal history, the duffle bag exchange, and the purported altercation with the cleaning woman, probable cause existed.

## II. STANDARD OF REVIEW

We review the Superior Court's grant or denial of a motion to suppress for an abuse of discretion.[7] But where the facts are not undisputed and only a constitutional claim that a search warrant was issued upon an insufficient showing of probable cause is at issue, we review the Superior Court's ruling *de novo*.[8]

---

[7] *Lopez-Vasquez v. State*, 956 A.2d 1280, 1284 (Del. 2008).
[8] *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008).

## III. DISCUSSION

Valentine contends that the searches of his home and car violated the Fourth Amendment of the United States Constitution[9] and that, therefore, the evidence seized during those searches should have been excluded at his trial. The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."[10] Thus, under the Fourth Amendment a search warrant may issue only upon a showing of probable cause.

In Delaware, the procedure for making this showing to a judicial officer is set forth in Chapter 23 of Title 11 of the Delaware Code. Particularly, 11 *Del. C.* § 2306 describes the necessary elements of a search warrant application:

> *The application or complaint for a search warrant* shall be in writing, signed by the complainant and verified by oath or affirmation. *It shall designate the house, place, conveyance or person to be searched* and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and *shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for*, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and *shall recite the facts upon which such suspicion is founded.* (emphasis added)

---

[9] Valentine makes a passing reference in a footnote in his opening brief on appeal to Art. I, § 6 of the Delaware Constitution but does not argue that our analysis of his claims under state constitutional law would or should be different than under the Fourth Amendment.

[10] U.S. CONST. amend. IV.

Section 2307(a) addresses the issuing magistrate's role and the contents of the warrant itself:

> (a) *Issuance of search warrants; contents* — If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible.

It is well settled that any finding of probable cause must be based on the information that appears within the four corners of the application or affidavit.[11] By requiring that the facts relied upon by the issuing magistrate be recorded in the affidavit, the ability of a reviewing court to assess whether the probable cause requirement has been satisfied without the need to resort to extrinsic testimony is preserved.[12] Sticking to only those facts and circumstances set forth in the affidavit, the magistrate is charged with making "a practical, common-sense decision whether . . . here is a fair probability that contraband or evidence of a crime will be found in a particular place.[13]

## A. "Four Corners" Review

The key factual assertions in the affidavit can be summarized as follows:

---

[11] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013); *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000) (referring to the four-corners test as a "time honored standard").
[12] *Dorsey*, 761 A.2d at 811.
[13] *Holden*, 60 A.3d at 1114 (citing *Illinois v. Gates*, 462 U.S. at 237).

- The two detectives who filed the application and affidavit collectively have "over (15) fifteen years police experience and (7) seven years of investigative experience," have "attended schools and seminar specifically dealing with narcotics investigations," and have "authored and/or co-authored over (100) one hundred search warrants."[14]

- During the first week of March 2016, an individual identified by the detectives as a "past proven reliable informant" told the detectives that Valentine "was known to sell marijuana" and kept "illegal narcotics and a handgun" inside his home at 2901 North Broom Street, Apartment 4, in Wilmington. [15]

- On March 19, which was between when the detectives received the tip and when they filed the warrant application on March 30, Valentine was arrested by the Delaware State Police. He was charged with possession of a firearm by a person prohibited, carrying a concealed deadly weapon, and speeding.

- In 2009, Valentine had been convicted of a "controlled substance charge" in Pennsylvania.[16]

- Police surveillance confirmed that Valentine appeared to live at the Broom Street address provided by the informant and regularly drove a 2016 Dodge Challenger—the car named in the search warrant.

- During the fourth week of March, Valentine was observed leaving 2901 Broom Street "and briefly meeting with an unknown black male where a duffle bag was exchanged between the two men."[17] Valentine then got into the Dodge Challenger and drove to Pennsylvania.

- On March 30, the same day that the officers applied for the search warrant, another resident of the Broom Street apartment building made a "terroristic threatening complaint" against Valentine,

---

[14] A47.
[15] *Id.*
[16] *Id.*
[17] A48.

claiming that he had called her on her cell phone and stated: "I know you have my money. Don't come home unless you have my f---ing money."[18] This person also alleged that Valentine's girlfriend also said something similar in person to her and that Valentine is a "known drug dealer."[19]

In denying Valentine's motion to suppress, the Superior Court recognized the centrality of the informant's tip during the first week of March to the determination of whether the detectives alleged sufficient facts upon which the magistrate could find probable cause for the search. But the Superior Court's decision was not based exclusively on the informant's tip:

> The warrant at issue in the present case contains more than the tip from the past-proven reliable confidential informant. The tip coupled with the officers' surveillance of Defendant, Defendants past criminal history including his arrest on March 19, and the altercation with the victim on March 30 establish probable cause to search Defendant's house and vehicle.[20]

Thus, the court found that the totality of these circumstances—the tip, corroborative facts gathered by way of surveillance, Valentine's criminal history, and the March 30 argument with the cleaning woman—supported the magistrate's probable cause finding. We disagree.

---

[18] *Id.*
[19] *Id.*
[20] A123.

9

## A. The Informant's Tip

Much has been written over the years about the extent to which the police, when applying for a search warrant, may rely on hearsay statements of informants whose identity is not disclosed in the search warrant affidavit. It is now settled that the assessment of informants' tips must take into account the reliability or veracity of the informant,[21] the basis of the informant's knowledge,[22] and "the degree to which the tip is corroborated by independent police surveillance and information."[23]

### (i) Veracity/Reliability

Police officers frequently attempt to demonstrate the credibility of an undisclosed informant by pointing to his past performance.[24] Here, the State contends that the detectives sufficiently checked that box by referring to the informant as a "past proven reliable confidential informant."[25] But such a conclusory allegation regarding the informant's past performance is problematic because it interferes with the issuing magistrate's ability to make an independent determination regarding the informant's reliability.[26]

---

[21] *Brown v. State*, 897 A.2d 748, 751 (Del. 2006).
[22] *Holden v. State*, 60 A.3d 1110, 1114 (Del. 2013).
[23] *LeGrande v. State*, 947 A.2d 1103, 1108 (Del 2008).
[24] 2 Wayne R. Lafave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(b) (5th ed. 2012).
[25] A47.
[26] *See Illinois v. Gates*, 462 U.S. 213 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the conclusion of others.").

The detectives' affidavit in this case said nothing about the manner in which the informant had proved to be reliable in the past (*e.g.*, investigation of prior tips corroborated their accuracy or led to convictions). For instance, the affidavit did not disclose whether prior tips provided by the informant had been established as accurate or led to arrests or convictions. In *Aguilar v. Texas*,[27] the United States Supreme Court held that an affidavit merely describing the informant as a "credible person" was insufficient to establish credibility because it was a "mere conclusion" lacking any information on "the underlying circumstances from which the officer concluded that the informant was . . . 'credible.'"[28] Similarly, in *Spinelli v. United States*,[29] where the affidavit only described the informant as "credible" and his information "reliable" the Supreme Court concluded that the affiant "offered the magistrate no reason in support of this conclusion."[30] And while *Illinois v. Gates*[31] abandoned the two-pronged test that had evolved from *Aguilar* and *Spinelli* in favor of a totality-of-the-circumstances test, *Gates* explicitly endorsed the proposition that

---

[27] 378 U.S. 108 (1964)
[28] *Id*. at 109, 114.
[29] 393 U.S. 410 (1969)
[30] *Id*. at 416.
[31] 462 U.S. 213 (1983).

11

conclusory allegations regarding an informant's past performance are insufficient to establish credibility.[32]

We therefore conclude that, at least to the extent it relied upon the informant's past performance, the affidavit was insufficient to establish the informant's credibility.[33] But our conclusion that the affidavit was insufficient to establish the informant's credibility on the basis of past performance does not end our inquiry. We must also consider whether other circumstances lend credence to the informant's report sufficient to support a probable cause finding for some other reason.

### (ii) Basis of knowledge

As mentioned, allegations that establish the basis of the informant's knowledge of the events or conduct he has reported to law enforcement can be "highly relevant in determining the value of his report."[34]

---

[32] *Id.* at 239 (quoting *Aguilar*, 378 U.S. at 117) ("An officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate."); *see also State v. Lechner*, 557 S.W.2d 195, 198 (Ark. 1977) ("Catch phrases alone such as 'reliable confidential informant, who has proven to be very reliable in the past,' carry no weight."); *State v. Woodall*, 666 P.2d 364, 366 (Wash. 1983) ("The affidavits merely state that the informant is 'a reliable informant who has proven to be reliable in the past' . . . the affidavits presented by [the officer] did not supply any facts establishing the credibility of the informant.").

[33] In reaching this conclusion, we are mindful that, in *Morgan v. State*, 962 A.2d 248 (Del. 2008), we concluded that information from an informant who was described as having "provided information in the past that has proven to be accurate" supported the magistrate's probable cause determination. But our holding in *Morgan* turned more on the informant's accurate prediction of the defendant's future movements than on his reliability based on past performance.

[34] *Illinois v. Gates*, 462 U.S. at 230.

12

The most straightforward way to establish an informant's basis of knowledge is by alleging that the informant is providing first-hand information.[35] The detectives in this case were apparently unable to make that allegation. Their affidavit does not disclose how the informant learned of the presence of drugs and a handgun in Valentine's apartment (did she see them herself or was she told of their presence?); how fresh or stale the informant's information was; the nature of the informant's relationship to Valentine; or whether the informant had ever been in Valentine's apartment or car. Thus, there is nothing in the substance of the tip itself that sheds light on the purported basis of the informant's knowledge.

Under certain circumstances, the absence of allegations that the informant had first-hand knowledge can be excused when the tip contains "sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."[36] For example, in *Spinelli*, the tipster "describe[d], with minute particularity, the clothes that [a suspect] would be wearing upon his arrival at the Denver station."[37] Once again, we find the affidavit deficient on that score.[38]

---

[35] *See Illinois v. Gates*, 462 U.S. at 234. "[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."]

[36] *Spinelli*, 393 U.S. at 416.

[37] *Id.* at 417.

[38] *Compare to Henry v. State*, 1991 WL 12094, at *2, 588 A.2d 1142 (Del. 1991) (Table); *Tolson v. State*, 900 A.2d 639, 643 (Del. 2006).

Beyond saying that Valentine "was in possession of illegal narcotics and a handgun that was kept inside his residence," the tip contained no detail whatsoever. It did not disclose the kind or quantity of narcotics kept by Valentine in his apartment, a description of the handgun, nor does it say even in the most general terms where in the apartment the drugs and gun might be found. In sum, the warrant affidavit does not contain any self-verifying detail that can stand in the place of first-hand knowledge so that the magistrate could reasonably know that the informant knew what she was talking about.

### (iii) Other indicia of reliability

When the United States Supreme Court abrogated the two-pronged *Aguilar-Spinelli* test[39] in favor of a totality-of-the circumstances test, it recognized that a deficiency in one of the *Aguilar-Spinelli* factors "may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability."[40] Accordingly, a question remains: despite the affidavit's failure to set forth facts

---

[39] Professor LaFave has succinctly described this test: "Under the first prong of *Aguilar*, or what might more precisely be called the basis of knowledge prong, facts must be revealed which permit the judicial officer making the probable cause determination to reach a judgment as to whether the informant had a basis for his allegations that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. By contrast, under the second prong of *Aguilar*, properly characterized the veracity prong, facts must be brought before the judicial officer so that he may determine *either* the inherent credibility of the informant *or* the reliability of his information on this particular occasion. Thus, the second or veracity prong of *Aguilar* was said to have a credibility spur and a reliability spur." 2 LaFave, *Search & Seizure* § 3.3(a) (5th ed.) (footnotes and quotations omitted).
[40] *Gates*, 462 U.S. at 233.

regarding the informant's past performance and basis of knowledge and the lack of detail in the tip itself, were there other indicia of reliability providing a substantial basis for the magistrate's conclusion that probable cause existed? The Superior Court's view was that "the officers' surveillance of [Valentine], [Valentine's] past criminal history including his arrest on March 19, and the altercation with the victim on March 30"[41] provided sufficient additional heft to the affidavit, tipping the scales in favor of the magistrate's probable cause finding. Addressing these additional factors in reverse order, we reach the opposite conclusion.

a.  The March 30 "altercation"

The affidavit recites that, on March 30, Valentine called the woman who resided at the Broom Street apartments by telephone and told her, "I know you have my money.  Don't come home unless you have my f---ing money."[42]  The woman told the detectives that she "usually cleans up around the apartment building"[43] and, earlier that day, she had thrown a grocery bag and a hat into the trash, not knowing what was in the grocery bag.  The clear import of this statement was that she surmised that the bag must have contained money belonging to Valentine and that Valentine thought that she had stolen it.  In any event, when she returned to the apartment building, she saw Valentine "waiting for her with his hands inside of his

---

[41] A123.
[42] A48.
[43] *Id.*

15

hooded sweatshirt pocket."[44]   The affidavit does not say that the woman believed that Valentine was armed.  According to the affidavit, Valentine's girlfriend came out of the building and accused the unidentified woman of "hav[ing] the money."[45]   The woman then called the police, but Valentine intervened," grab[bing] [the] victim's phone from her hand and stat[ing] to the dispatcher that everything was fine and that the police did not need to respond."[46]   Valentine then went into his apartment, where he remained until the police arrived.  The woman told the police that she feared for her safety because Valentine is a known drug dealer who might act on his threats.[47]

The State argues that this interaction between Valentine and the unidentified woman and the woman's opinion that Valentine was a drug dealer corroborated the earlier informant's tip "that Valentine possessed a handgun."[48]   For good measure, the State opines, without any support within the four corners of the affidavit, that the incident was indicative of Valentine's "apparent loss of a large amount of money."[49]   Although the Superior Court found this incident to be relevant to the magistrate's finding of probable cause that Valentine was concealing a weapon in the Broom Street apartment or in his car, it did not state how this was so.

---

[44] *Id*.
[45] *Id.*
[46] *Id.*
[47]   Although the woman characterized Valentine's statements as threats, the jury ultimately acquitted Valentine of terroristic threatening.
[48] Ans. Br. 10.
[49] *Id.*

16

To be sure, search warrant affidavits must be "considered as a whole and not on the basis of separate allegations."[50] Nevertheless we pause here to remark on the questionable utility of the information provided by the purported victim[51] of Valentine's threats to the assessment of the reliability of the initial informant's tip. First, nothing about the incident tends to corroborate the tip, which was that Valentine possessed illegal drugs and a handgun, let alone that he did so in the Broom Street apartment. And even if one were inclined to infer from Valentine's misguided effort to recover his money from the unidentified woman that the source of that money was illegal activity—an inference we do not make—it would be mere speculation to conclude that the activity was drug dealing and, more to the point, that a handgun was involved. Viewed objectively, the March 30 incident was corroborative of nothing more than Valentine's reputation as a drug dealer. And we

---

[50] *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[51] The jury acquitted Valentine of the terroristic-threatening charge.

have long recognized that information developed by way of general rumor or reputation is of limited, if any, reliability in the search warrant context.[52]

### b. Valentine's March 19 Arrest

The affidavit states that Valentine was arrested on March 19, 2016 by the Delaware State Police for possession of a firearm by a person prohibited, carrying a concealed deadly weapon, and speeding. The fact of this arrest was noted by the Superior Court, and the State now asserts that the arrest was "corroborative evidence that Valentine possessed a handgun." But, the March 19 arrest, if anything, undermines the affidavit's claim that Valentine possessed the handgun on March 30. Stated differently, the March 19 arrest cannot simultaneously corroborate the informant's tip that Valentine possessed a handgun in his home *and* support the inference that that same handgun, having been seized by the Delaware State Police on March 19, would be found in his home or car on March 30.

---

[52] *See Schramm v. State*, 366 A.2d 1185, 1191 (Del. 1976) (noting the importance of the determination that "the informant had gained his information in a reliable manner, and not by way of general rumor or reputation."); *Spinelli,* 393 U.S. 410, 416 ("In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation"); *Marvel v. State*, 290 A.2d 641, 643 (Del. 1972) (noting that holding in *Spinelli* with approval). *But see United States v. Harris*, 403 U.S. 573, 583 (1971) ("a policeman's knowledge of a suspect's reputation" is "a practical consideration of everyday life upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip" (internal quotations omitted)).

### c. Valentine's Criminal History

Although the Superior Court found that Valentine's criminal history—a 2009 "controlled substance charge out of the State of Pennsylvania"[53]—supported the magistrate's probable cause determination, the purpose for which the Superior Court considered the history is unclear. The fact of a prior conviction, had it been for a felony-level crime, might have been relevant to Valentine's status as a person prohibited from possessing firearms, but the affidavit does not say whether the conviction was a felony or a misdemeanor. For all that we know from the affidavit, it could have been a simple possession charge. In any event, the State takes a different tack, arguing that Valentine's prior drug conviction corroborated "[t]he CI's statement that Valentine possessed and dealt drugs."[54]

The State's contention is flawed for two reasons. First, the detectives did not seek the warrant to search for drugs; they were looking for a gun and ammunition. Second, the conviction was nearly seven years in the past as of the date of the warrant application. As we noted in *Jones v. State*,[55] "[p]robable cause must be manifest at the time the police seek the search warrant, not at some earlier point in time." By

---

[53] A47.

[54] Answering. Br. 10.

[55] 28 A.3d 1046, 1058 (Del. 2011) (holding that drugs and weapons charges dating back approximately six years before a warrant application do not support a factual inference that the police would find contraband at the defendant's home).

19

any reasonable standard, a 2009 drug conviction is stale and does not support an inference that the detectives would find contraband, much less a gun, in 2016.

### d. The Officers' Surveillance

The warrant affidavit suggests that the police placed the Broom Street address under surveillance approximately two weeks before they applied for the search warrant. During that period, the detectives saw Valentine exiting the apartments on two separate occasions. On one of those occasions, they saw Valentine "exiting the rear door of 2901 Broom Street and briefly meeting with an unknown black male where a duffle bag was exchanged between the two men."[56] The affidavit does not disclose any particularized facts upon which an independent fact-finder could conclude that the men were acting in a suspicious manner, that they were making an effort to conceal their conduct, or even that the duffle bag contained contraband instead of, say, clothing. The affidavit does not even say which of the two men gave or received the bag during the exchange. Moreover, in their affidavit, the detectives do not offer any opinion on *why*, based on their training and experience, the duffle bag exchange was indicative of criminal activity of any sort or *why* the exchange would tend to indicate that police would find illegal weapons and ammunition in Valentine's home or car. Put simply, the police surveillance uncovered no facts relevant to or corroborative of the informant's tip save Valentine's association with

---

[56] A48.

the Broom Street apartment, and gave a neutral, independent fact-finder no additional reason to think that there was probable cause to believe that there would be contraband in Valentine's home or car.

\* \* \*

Although we review a magistrate's probable cause determination with great deference, we must nevertheless test the reasonableness of the magistrate's conclusion that the items sought—here, a handgun and ammunition—would be found in the places to be searched.[57] Where the police are acting on the basis of an unidentified informant's tip whose past performance as an informant and basis of knowledge of the subject matter of the current tip are not set forth in the affidavit and where the tip is devoid of detail and not corroborated in any meaningful way, a conclusion that there was probable cause for a search warrant is not reasonable.

We therefore find that the search of Valentine's apartment and car violated his rights under the Fourth Amendment to the United States Constitution. Accordingly, the evidence seized during those searches should have been suppressed.

## IV. CONCLUSION

The judgments of conviction of the Superior Court are **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this Opinion.

---

[57] *Jones*, 28 A.3d 1057.