IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RODERICK BROWN, | § | |
| | § | No. 292, 2018 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. Nos. S16M-11-001 & |
| STATE OF DELAWARE, | § | S16M-12-002 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: April 26, 2019
Decided: July 22, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.


Upon appeal from the Superior Court. **AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.


Roderick Brown, *pro se*.

Kathryn J. Garrison, Esquire, Department of Justice, Dover, Delaware for Appellee State of Delaware.


**TRAYNOR**, Justice:

When police arrested appellant Roderick Brown[1] for drug dealing and money laundering, they also seized several cars and tens of thousands of dollars. Brown filed petitions for the return of that property, but after an evidentiary hearing, the Superior Court denied the bulk of Brown's claims. Brown then filed this appeal. Because we conclude that the State failed to meet its burden for the seizure of two of Brown's cars, we reverse in part. We affirm the remainder of the Superior Court's decision.

## I. BACKGROUND

### A. The seizures

After an investigation, Delaware State Police arrested Brown on August 26, 2016, while he was sitting outside of 206 Houston Circle in Millsboro, Delaware in a 2003 Honda Accord. The police seized the Honda, which was registered to Brown, as well as a set of keys from Brown's person. The police also executed a search warrant for an apartment at 206 Houston Circle. In the apartment, police found cocaine, marijuana, heroin, and $1,644 in cash. The police also found a computer with the name "Brown" on the login screen, a doctor's appointment card for Brown, photos of Brown, and unsigned mortgage papers bearing Brown's name.

---

[1] Brown also uses the name Roderick Mumford, and his criminal case was litigated under that name. *See Mumford v. State*, 2018 WL 5096074 (Del. Oct. 17, 2018).

The police also searched two garages in the Houston Circle complex and seized a 2002 Mercedes-Benz, which is not at issue in this appeal, and a 1972 Cadillac, which was registered to Brown. The police searched the garage in which the Cadillac was stored because the owner of that garage told police that Brown paid her $50 per month to keep a car in the garage. The police found no drugs or other contraband in the Cadillac or in the garage. The police seized the Cadillac because they believed that Brown had purchased it with the proceeds of drug sales.

The police also executed a search warrant for a property on Berry Road in Frankford and seized a 1968 Oldsmobile registered to Brown parked behind the property. As with the Cadillac, the police seized the Oldsmobile because they believed that it had been purchased with drug proceeds. The police found no drugs or other contraband in the Oldsmobile or at the Berry Road property.

During their investigation, the police learned that Brown stored drugs and drug proceeds at a property on El Coleman Drive in Millsboro. The police searched the El Coleman property and found cocaine, heroin, drug packaging materials, digital scales, guns, ammunition, $3,813 in cash, and two keys.[2]

The keys from the El Coleman property were for two safe deposit boxes at PNC Bank branches in Millsboro and Selbyville, but only the contents of the Millsboro safe deposit box are at issue in this appeal. The police obtained and

_____

[2] Police also found Brown's passport and birth certificate at the property.

executed search warrants for the safe deposit boxes. In the Millsboro safe deposit box (owned by Brown and a woman named Shawanda Knox), the police found $73,000 separated into $1,000 stacks. Brown and Knox also had two bank accounts at PNC Bank. One account contained $2,513 and the other account contained $2,022.52. The police seized the cash in the safe deposit boxes and the funds in the bank accounts because they believed that the money constituted proceeds from the sale of drugs. Brown originally denied ownership of the money in the Millsboro safe deposit box and bank accounts. Police sent the cash to the Delaware National Guard for forensic testing.

## B. Legal proceedings

In November and December 2016, Brown filed two petitions for the return of the seized property. In one petition, Brown sought the return of the Cadillac, the Oldsmobile, and the Honda. In the other petition, Brown sought the return of $47,430 in cash from the Millsboro safe deposit box, $4,175.62 from his PNC Bank accounts, and $1,644 in cash from the Houston Circle apartment. Knox and the co-owner of the Selbyville safe deposit box also filed petitions for the return of property. Those proceedings were stayed pending resolution of the criminal matter.

In July 2017, a Superior Court jury found Brown guilty of drug dealing and money laundering. We affirmed the Superior Court's judgment of conviction, concluding, among other things, that the "evidence, in its totality, provided a

4

sufficient basis for the jury to conclude with the required certainty that a substantial amount of the cash found in the safe deposit boxes was the product of [Brown]'s sale of illegal drugs."[3]

On April 18, 2018, a Superior Court Commissioner held a hearing on all four petitions (Brown's and the other petitioners') for the return of property. Brown appeared without counsel at the hearing, but neither of the other petitioners appeared. At the beginning of the hearing, the Commissioner ruled that the validity of the search warrants that Brown sought to challenge—*i.e.*, those leading to the seizure of the Cadillac and the Oldsmobile—could not be relitigated because Brown was found guilty in the criminal proceedings.

In a written order dated May 10, 2018, the Commissioner found that the State had established probable cause for the seizure of the Honda, Cadillac, Oldsmobile, and $47,430 in the Millsboro safe deposit box and that Brown had not rebutted the presumption of forfeitability by a preponderance of the evidence.[4] The Commissioner found that the State had not established probable cause for the seizure of the Millsboro bank accounts and that therefore the $4,175.62 should be returned to Brown. The Commissioner recommended that the Superior Court enter an order deeming the Cadillac, Oldsmobile, Honda, and $47,430 in the Millsboro safe deposit

---

[3] *Mumford v. State*, 2018 WL 5096074, at *1, 196 A.3d 412 (Del. Oct. 17, 2018) (Table).
[4] Commissioner's Order ("Commissioner's Report" hereafter), *Brown v. State*, S16M-11-001 and S16M-12-002 (consolidated) (Del. Super. May 10, 2018).

box forfeited to the State. Neither party objected to the Commissioner's order. In an order dated May 29, 2018, the Superior Court adopted the Commissioner's findings and conclusions.[5] This appeal followed.

## II. STANDARD OF REVIEW

We will uphold the Superior Court's decision that Brown's property was subject to forfeiture unless we find that the decision was clearly erroneous.[6] The State has the initial burden of establishing probable cause that the cars and money were subject to forfeiture under 16 *Del. C.* § 4784.[7] A car is subject to forfeiture if it was used to transport illegal drugs.[8] We also have held that motor vehicles purchased with the proceeds of illegal drug sales are subject to forfeiture under 16

---

[5] Final Order, *Brown v. State*, S16M-11-001 and S16M-12-002 (consolidated) (Del. Super. May 29, 2018).
[6] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998).
[7] *Id.*
[8] 16 *Del. C.* § 4784(a)(4).

*Del. C.* § 4784(a)(7).[9]  Once the State establishes probable cause, the petitioner must show by a preponderance of the evidence that he has a "lawful possessory interest in the seized property" and that "[t]he property was unlawfully seized or not subject to forfeiture . . . ."[10]  "A defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the

---

[9] *Jackson v. State*, 2012 WL 6707734, at *2, 70 A.3d 206 (Del. 2012) (Table); *see also Maldonado v. State*, 2016 WL 5864586, at *2 n.1, 148 A.3d 1173 (Del. 2016) (Table) (recognizing that "profits from drug sales are subject to forfeiture" under 16 *Del. C.* § 4784(a)(7).  We note that these cases reach this conclusion without any analysis of § 4784(a)(7)'s text which, in relevant part, provides that the following items shall be forfeitable to the State:

> All moneys, negotiable instruments, securities or any other thing of value furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in violation of this chapter; *all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of this chapter*. (emphasis added).

It is less than crystal-clear that the highlighted language covers the vehicles in this case—or, for that matter, in any case.  Federal law provides for civil forfeiture in drug-related cases under 21 U.S.C. § 881, which is substantially similar—but not identical—to § 4784. (We note that although § 4784 organizationally falls under Delaware's version of the Uniform Controlled Substances Act, the text of § 4784 is clearly based on the federal § 881 and not on the model uniform act's § 504, which enumerates the types of property subject to civil forfeiture.)

In particular, paragraph (a)(6) of the federal § 881 provides that the following is forfeitable:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, *all proceeds traceable to such an exchange*, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. (emphasis added).

Relying on the emphasized language, federal courts have held that § 881(a)(6) provides for forfeiture of property purchased with drug proceeds. *United States v. Premises Known as 8584 Old Brownsville Rd., Shelby Cty., Tenn.*, 736 F.2d 1129, 1130 (6th Cir. 1984) ("[I]n our opinion, the term 'all proceeds' in § 881(a)(6) is unambiguous and includes all types of property, both real and personal."). The phrase "all proceeds traceable to such an exchange" is, of course, absent from § 4784(a)(7). Nevertheless, in the cases at the beginning of this footnote, this Court has held that § 4784(a)(7) provides for forfeitures similar in scope to the federal statute despite the semantically different language.  What is more, Brown has not challenged the State's assertion that cars bought with drug-sale proceeds are subject to forfeiture under § 4784(a)(7).

[10] 16 *Del. C.* § 4784(j); Super. Ct. Civ. R. 71.3(d)(1).

defendant was convicted in any proceeding brought pursuant to this Rule, regardless of the pendency of an appeal from that conviction."[11]

### III. ANALYSIS

Brown's arguments on appeal may be summarized as follows: (1) the Superior Court erred by barring any challenges to the legality of the search warrants that led to the seizures on collateral-estoppel grounds; (2) the State failed to show that the Cadillac and Oldsmobile were purchased with drug proceeds and that the Honda was used to transport drugs; and (3) the State failed to show that the $47,430 cash in the Millsboro safe deposit box constituted drug proceeds.

As an initial matter, we reject the State's argument that Brown waived consideration of his claims because he failed to file objections to the Commissioner's order. First, the applicable rule regarding dismissal is discretionary rather than mandatory.[12] Next, unlike *Maniscalco v. State* where the appellant ignored this Court's express directions to file objections to a Commissioner's report and recommendations before filing an appeal in this Court,[13] Brown has not ignored similar directions here. We therefore address Brown's arguments on the merits.

---

[11] Super. Ct. Civ. R. 71.3(f)(1).
[12] Super. Ct. Civ. R. 132(b) ("A party seeking reconsideration of an order of a Commissioner under subparagraph (3) or appealing the findings of fact and recommendations of a Commissioner under subparagraph (4) who fails to comply with the provisions of this rule *may* be subject to dismissal of said motion for reconsideration or appeal.") (emphasis added).
[13] 2017 WL 443725 (Del. Jan. 10, 2017).

## A. The search warrants and collateral estoppel

Brown first contends that the Superior Court erred when it precluded him on collateral-estoppel grounds from litigating the legality of the search warrants. In Delaware, collateral estoppel bars petitioners in forfeiture proceedings from relitigating the validity of search warrants when that issue has been previously litigated in a criminal trial where the petitioner was a defendant.[14] For collateral estoppel to apply, an issue must have been fully litigated, determined by a final judgment, and essential to that judgment.

The State concedes that the Superior Court erred by invoking collateral estoppel to bar Brown from challenging the legality of the warrants that led to the seizure of the Cadillac and Oldsmobile. Because Brown did not file a motion to suppress in the criminal proceedings,[15] the legality of the warrants was not fully litigated,[16] and thus collateral estoppel does not apply. But because we determine

---

[14] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998); *Brawley v. State*, 1999 WL 1254567, at \*2, 741 A.2d 1025 (Del. 1999) (Table).

[15] Indeed, it would have been strange for Brown to have filed a suppression motion involving those particular warrants given that the police found no contraband or other incriminating evidence when executing those warrants.

[16] *See, e.g., Brawley*, 1999 WL 1254567, at \*1 (holding that the petitioner was collaterally estopped from challenging the legality of a search where the petitioner's motion to suppress in the criminal proceedings had been denied and he had pled guilty to Maintaining a Dwelling); *Brown*, 721 A.2d at 1265 (holding that the petitioner was collaterally estopped from questioning the legality of the search and seizure in the civil forfeiture case because the trial court had heard most of the issues in the course of a suppression hearing in the criminal case).

9

that Brown is entitled to the return of the Cadillac and the Oldsmobile on other grounds, we do not reach the merits of whether those warrants were legal or not.

Brown also challenges for the first time the legality of the search warrants that led to the seizure of the Honda and the money in the Millsboro safe deposit box. But unlike Brown's challenge to the warrants that led to the seizure of the Cadillac and Oldsmobile, which was thwarted by the Superior Court's application of collateral estoppel, Brown did not raise a challenge below to the warrants leading to the seizure of the Honda or the money in the Millsboro safe deposit boxes. Accordingly, Brown has waived his new argument on appeal that those warrants were illegal.[17]

## B. The cars

As mentioned, the police seized a Cadillac, an Oldsmobile, and a Honda on the basis that they had been purchased with drug-sale proceeds. As for the Honda, police offered the additional basis that it had been used to transport drugs. The Superior Court rejected Brown's petition for return of the cars because it found that the police had probable cause to support the seizure of the cars and that Brown had not shown by a preponderance of the evidence that he had a "lawful possessory interest in the seized property" and that "[t]he property was unlawfully seized or not subject to forfeiture . . . ."[18]

---

[17] Supr. Ct. R. 8.
[18] *Supra* note 10 and accompanying text.

10

An initial problem with the Superior Court's finding of probable cause is that the cars that the State seized from Brown do not fit well with the State's own description of how certain drug dealers use cars to protect their assets. As to the connection between drug dealing and car purchases, Delaware State Police Detective Sean Callaway testified that "larger scale drug dealers" tend to "hide their proceeds in vehicles" by buying and customizing multiple vehicles that are less likely to be seized.[19] Here, however, there was no evidence suggesting that Brown was a "larger scale drug dealer." Nor was there evidence that the cars were unusually valuable or that Brown had undertaken substantial customization of any of the cars seized by the police such that they would be worthwhile stores of value,[20] especially when considered in comparison to the amount of cash that police seized. Furthermore, police found no drugs or drug paraphernalia on Brown when he was arrested or in any of the cars.

### i. The Cadillac and Oldsmobile

The legal ground for the seizure of the Cadillac and the Oldsmobile was that they were purchased with the proceeds of unlawful drug sales. The bases of the Superior Court's finding of probable cause to believe they were so purchased

---

[19] B95.

[20] Brown testified that he bought the Cadillac in 2014 for $9,930, the Oldsmobile in 2012 for $2,500, and the Honda in 2015 for $200. Brown also said that he had put aftermarket wheels on the Cadillac, $3,000 into fixing the Oldsmobile, and $1,700 into the Honda.

11

consisted of (1) a detective's testimony that drug dealers often purchase multiple vehicles and store them in different locations to prevent seizure and (2) Brown's convictions for drug dealing and money laundering.

Although those bases are perhaps true, standing alone, they do not adequately establish probable cause. In particular, here—in addition to the (absence of) evidence discussed above—Brown purchased the Oldsmobile and Cadillac at modest prices in 2012 and 2014, respectively, and there was no evidence that Brown was engaged in unlawful conduct during those years. Stacked against these deficiencies in the record, the bare testimony that "larger scale" drug dealers use cars to "hide their proceeds" is a reed far too slender to support a finding that the police had reasonable grounds to believe that either of these vehicles was subject to forfeiture. The Cadillac and Oldsmobile should therefore be returned to Brown.

ii. *The Honda*

As for the Honda, the State contends that its forfeiture is justified because the police had probable cause to suspect that Brown was using the Honda to transport drugs.[21] Although we think the matter is far closer than the Superior Court allowed, we agree with the State. Brown was convicted of drug dealing based on the cocaine, heroin, and cash found at the Houston Circle apartment, Brown was paying rent for

---

[21] On appeal, the State has not pressed, as it did below, its contention that the $200 Honda constituted a fruit of Brown's illegal activity.

that apartment, and Brown was parked outside that apartment in the Honda when the police executed the search warrant. Moreover, the evidence showed that the situs of Brown's drug dealing activity was not limited to the Houston Circle apartment. As mentioned, the police found substantial evidence of drug dealing at the El Coleman property. Under these particular circumstances, we are satisfied with the State's showing that the police reasonably believed that Brown used the Honda to transport controlled substances to and from the apartment and with the Superior Court's conclusion that Brown failed to demonstrate that he was entitled to the return of the Honda.

It is worth noting, however, that we found the direct oral testimony that the State offered—and the Superior Court accepted—in support of the Honda's seizure to be unpersuasive. As Detective Callaway put it, "[t]he Honda was seized due to the culmination of the investigation. We learned that he used that vehicle to transport illegal narcotics and drug proceeds."[22] This conclusory statement fails to add anything to the mix of facts that would allow a court to conclude the police had reasonable grounds to believe that Brown used the Honda "to facilitate the sale,

---

[22] B70. We note that "[t]he probable cause standard for forfeiture is essentially the same as that applied in Fourth Amendment search and seizure cases." *In the Matter of One 1987 Toyota*, 621 A.2d 796, 799 (Del. Super. May 15, 1992) (citing *United States v. One 1974 Porsche 911-S Vehicle Identification No. 9114102550*, 682 F.2d 283, 285 (1st Cir. 1982)). Our law is clear that in the search warrant context, a magistrate's probable cause determination will not stand if it is based solely on conclusory allegations from unidentified sources without indicia of reliability. *Valentine v. State*, 207 A.3d 566, 572–77 (Del. 2019); *see also Illinois v. Gates*, 462 U.S. 213, 233 (1983).

13

transport, or possession with intent to deliver"[23] illegal drugs. Likewise, although Detective Callaway testified that the Houston Circle apartment "was identified through the investigation as what drug dealers usually call a trap house,"[24] he did not disclose any of the investigative facts, such as statements from reliable informants or evidence of drug activity derived from surveillance, that supported this conclusion. But these flaws in the State's presentation do not cause us to disregard the common-sense conclusion, dictated by the evidence described above, that Brown used the Honda to transport and facilitate the sale of drugs.

## C. The cash

Finally, we affirm the Superior Court's denial of Brown's request to have the cash returned. Under 16 *Del. C.* § 4784(a)(7)(b), "[a]ll moneys . . . found to have trace amounts of controlled substances on them are presumed to be forfeitable . . . . The burden of proof is upon the claimant of the property to rebut this presumption." The money seized from Brown had more than trace amounts of cocaine, and we agree with the Superior Court that Brown did not rebut the presumption of forfeitability.

The State established the presence of cocaine through a process called ion-mobility spectrometry, or ion scanning. In ion scanning, a machine ionizes the

---

[23] 16 *Del. C.* § 4784(a)(4).
[24] *Id.*

14

molecules of the sample, imbuing them with an electric charge. Then, the ionized molecules feed through an electric field, which separates the molecules based on size and shape. Finally, a detector at the end of the electric field determines the concentrations of the molecules that were in the sample. Because all paper currency has drug residue, the Delaware National Guard obtains money from area banks and scans a sample of that money to determine the average amount of drug residue on currency from casual contact. The threshold for an alarm is double the average.

In this case, the sample from the safe deposit boxes,[25] which is the only sample of relevance in this appeal, had six times the casual contact average for cocaine. To gather the sample, Delaware National Guard Sergeant Christopher Sama[26] fanned out the cash on a table and vacuumed the cash. Sergeant Sama separately gathered samples for the cash found in the safe deposit boxes, the Houston Circle apartment, and the El Coleman property. Delaware National Guard Master Sergeant Matthew Christiano then tested the samples using the ion scan machine and found the above result.

---

[25] According to the ion scan report admitted as Exhibit 8, the sample bearing ID number 004 contained "$105,700.00 USC," not $1,700 as Master Sergeant Christiano said in his testimony on the stand. B138. This discrepancy between the report and Sergeant Christiano's testimony leads us to wonder whether he misspoke during his testimony or whether the testimony might have been mistranscribed.

[26] Sergeant Sama was certified in 2003 but has not been certified since them because the sample-gathering machine, ion scan machine, and operating procedures have not changed since his certification.

Brown has failed to rebut the presumption of forfeitability established by the ion scan test. First, as the State notes, there was probable cause for forfeiture even without the ion scanning results: the State offered evidence of cocaine and heroin in places associated with Brown, testimony that drug dealers regularly store their drug proceeds in $1,000 stacks as the money was stored in the Millsboro safe deposit box, and Brown's convictions for drug dealing and money laundering.

Second, Brown's argument that the existence of drug residue on all currency made the ion scan results "worthless"[27] is unconvincing. That argument ignores that the test results showed that the money had six times as much cocaine as the casual contact average, and Brown fails to explain why we should not consider those results as probative, even if not dispositive, that the money constituted fruits of Brown's drug dealing.

Third, as mentioned earlier, in a forfeiture proceeding under 16 *Del. C.* § 4784, "a defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the defendant was convicted . . . ."[28] And in Brown's underlying criminal proceeding, an essential allegation of the money laundering charge was that that the money found in the safe

---

[27] Opening Br. 3.
[28] *Supra* note 11 and accompanying text.

16

deposit boxes was the product of Brown's illegal drug activity. Thus, Brown is now precluded from denying that fact.

Fourth, Brown failed to show independently that the money came from legitimate sources. Brown submitted his federal and state income returns for 2013, 2014, and 2015, which showed that Brown had $38,508 in total after-tax income for those three years. Brown testified that these returns showed his income from his carpet and cleaning business; he said that he earned additional money from detailing cars and mentoring, but he did not specify the amount of these earnings. Delaware State Police Detective Dallas Reynolds also testified that Brown had told him that he had made some money on the side, including $21,000 from the lottery and $42,000 from construction jobs, but these claims were contradicted by Brown's tax returns. In any case, Brown was still paying $1,500 a month for the Houston Circle and Berry Road properties, he had paid more than $10,000 for cars between 2013 and 2015, and he had saved $4,175.62 to his PNC bank accounts, money which the Superior Court returned. Accordingly, the Superior Court did not err by holding that Brown had failed to show that that the $47,430 he is now requesting came from legitimate sources rather than drug proceeds.

Finally, Brown also argues for the first time on appeal that (1) the State failed to offer ion scans from area banks to prove the drug residue threshold, (2) the State improperly commingled the money from the two safe deposit boxes before running

17

the ion scan test,[29] (3) the State did not present the control/blank ion scan results, and (4) the State failed to show that the ion scanning machine was cleaned between each of the scans. Absent plain error, we will not consider matters that were not fairly presented to the Superior Court.[30] There is no plain error here because, as we have noted, there was probable cause sufficient for civil forfeiture even without the ion scanning results.

## IV. CONCLUSION

Therefore, the judgment of the Superior Court is affirmed in part, reversed in part, and remanded for entry of an order consistent with this Opinion.

---

[29] The State conceded, without offering any justification, that Brown was "correct that the money seized from the two safety deposit boxes was combined and tested as one sample." Answering Br. 15.

[30] Supr. Ct. R. 8.