IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRELL LOPER, | § | |
| | § | No. 394, 2022 |
| | § | |
| | § | |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No.: 1809005786 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: April 26, 2023
Decided: May 31, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 31st day of May, 2023, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Tyrell E. Loper appeals from the Superior Court's denial of his motion for postconviction relief under Superior Court Criminal Rule 61. Loper's motion contained one claim: that his trial counsel failed to challenge a search warrant that, according to Loper, was based on a legally deficient search-warrant application. More specifically, Loper alleges that the application was based on unreliable informant hearsay and failed to establish probable cause that contraband would be found in Loper's apartment. That being so, Loper contends that it was objectively unreasonable for his trial counsel to refrain from mounting a challenge to the warrant.

(2) The search warrant that led to Loper's arrest was granted and executed on September 10, 2018. The affidavit supporting the search warrant application stated that the Wilmington Police Department had corroborated tips from two confidential informants and one confidential source that Loper was distributing heroin and cocaine from an apartment at 812 North Adams Street. As will be discussed below, the principal means by which the police corroborated the tips was a controlled drug purchase. Armed with the search warrant, the police conducted a search of the apartment, where they found crack cocaine, heroin laced with fentanyl, drug paraphernalia, and documents linking Loper to the apartment.

(3) At the conclusion of a bench trial, Loper was convicted of heroin drug dealing, cocaine drug dealing, and possession of drug paraphernalia charges. After a presentence investigation, the Superior Court sentenced Loper to an aggregate of 25 years of incarceration, suspended after four years for two years of decreasing levels of supervision. This Court affirmed Loper's convictions judgment on direct appeal.[1]

(4) Loper filed a timely *pro se* motion for postconviction relief under Superior Court Criminal Rule 61 and moved for appointment of counsel. After that, Loper's appointed counsel filed an amended motion for postconviction relief, in which Loper claimed that his trial counsel failed to challenge the search warrant on

---

[1] *Loper v. State*, 234 A.3d 159, 2020 WL 2843516 (Del. June 1, 2020) (TABLE).

probable cause grounds and that, as a result, he suffered prejudice. Loper's amended motion asked the Superior Court to "grant all appropriate postconviction relief."[2] In accordance with the court's order, Loper's trial counsel filed an affidavit in response.

(5) The Superior Court, first finding no procedural bars, assessed Loper's ineffective-assistance claim under the two-pronged test established in *Strickland v. Washington*.[3] In denying the claim, the court found that Loper failed to establish, under *Strickland*'s first prong, that his trial counsel's performance was objectively unreasonable. It held that Loper's trial counsel's representation did not fall below the objective standard of reasonableness because "the facts contained within the warrant were sufficiently corroborated" and "[w]ithin the four corners of the warrant, there is probable cause to search North Adams Street."[4] Loper appealed to this Court.

(6) Loper asserts on appeal that the Superior Court abused its discretion, because no reasonable lawyer would have failed, as his trial counsel did, to challenge the search warrant for lack of probable cause. First, he contends that the search warrant relied on uncorroborated information provided by informants who were not properly established as "past proven reliable." Second, he claims that the

---

[2] App. to Opening Br. at A321.
[3] 466 U.S. 668 (1984).
[4] *State v. Loper*, 2022 WL 4394721, at *4 (Del. Super. Ct. Sept. 21, 2022).

3

affidavit supporting the search warrant application did not sufficiently link the controlled drug purchase to Loper's apartment. More specifically, according to Loper, because the police surveillance of the controlled buy did not permit the police to watch the confidential informant enter Apartment #1 of the building at 812 North Adams Street, but only the building itself, they did not have probable cause to believe that the transaction was tied to Apartment #1. A review of the search warrant application demonstrates that both of Loper's claims are without merit.

(7)     Over the course of the month preceding the application for and issuance of the search warrant, the detective who applied for the warrant was told by three confidential informants that an individual, known to them as "Diddy" and described as "a short, medium built black male with a beard in his thirties,"[5] was storing and distributing heroin and cocaine from an apartment known as 812 North Adams Street, Apartment #1. After the first informant, identified as "CI1" in the warrant application, provided this information, the detective arranged for the informant to engage in a controlled purchase of heroin from "Diddy" at the apartment.

(8)     In his warrant application and affidavit, the detective described the mechanics of the controlled purchase:

> Your affiant can truly state that during the first half of August 2018, a meeting was conducted with CI1 for the purpose of conducting a controlled narcotics purchase from "Diddy". CI1 was checked for contraband and currency, was supplied with a sum of departmentally issued buy money, and was instructed to respond to 812 N. Adams St

---

[5] App. to Opening Br. at 24–25.

4

Apt #1[] for the purpose of purchasing heroin. Your affiant and assisting members of the [Drug Organized Crime and Vice Division] maintained constant visual contact with CI1 as they responded to same. It should be noted that prior to CI1's arrival, a short black male subject fitting the given description of the target was observed entering the residence. CI1 was observed entering the front main door where they remained for a brief period before exiting. Upon leaving the area, constant visual contact was maintained until CI1 arrived at a predetermined meeting place. CI1 was again searched for contraband and currency and provided your affiant with an amount of powdery substance consistent with packaged heroin (submitted to evidence). CI1 was able to positively identify "Diddy" as the individual who provided them with the heroin.[6]

(9) All three informants were shown DELJIS[7] rapsheet photographs of Tyrell Loper and confirmed that the depicted individual was the drug dealer they knew as "Diddy."

(10) The third informant stated that, in addition to using the apartment for drug sales, Loper also used "a white in color Crown Victoria or Grand Marquis style vehicle to store illegal contraband,"[8] and that the vehicle was kept in a parking lot near Loper's North Adams Street residence. The detective noted in his warrant application that he had spotted a white car matching that description in the described location and that the car appeared to remain stationary.

(11) In the affidavit he filed in compliance with the Superior Court's order in the Rule 61 proceeding, Loper's trial counsel explained that he evaluated the

---

[6] *Id*. at A24.
[7] "DELJIS" stands for Delaware Criminal Justice Information System.
[8] App. to Opening Br. at A25.

search warrant application and concluded that the controlled heroin purchase and the verification of the presence of the white car where the third informant said it would be provided sufficient corroboration of the informants' tips. This, according to Loper's trial counsel, is "why no Motion to Suppress was filed."[9] We take this to mean that Loper's trial counsel, in the exercise of his professional judgment, concluded that a motion to suppress the fruits of the search conducted under the warrant would have been a futile exercise.

(12) We agree with the Superior Court that trial counsel's decision not to move to suppress was not objectively unreasonable. In so holding, we note that "review of counsel's representation is subject to a strong presumption that the representation was professionally reasonable."[10] Had the police relied exclusively on the informants' tips, we might look at Loper's claim differently. Admittedly, the description of the informants' past veracity and reliability is conclusory and likely insufficient under *Valentine v. State*.[11] But search-warrant affidavits must be "considered as a whole and not on the basis of separate allegations."[12] Here, the controlled purchase of heroin from Loper in the apartment that was searched under the warrant by itself justified Loper's trial counsel's decision to forgo a motion to

---

[9] *Id*. at A324.
[10] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[11] 207 A.3d 566, 572–73 (Del. 2019) (finding a reference to an informant as a "past proven reliable confidential informant" insufficient, standing alone, to establish the informant's credibility).
[12] *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

6

suppress. That two other informants corroborated what the police had learned from the first informant and the controlled purchase provided further, if unnecessary, support for counsel's decision.

(13)    Relatedly, we reject Loper's contention that, because the police only saw the first informant enter Loper's apartment building[13]—and not his specific apartment—during the controlled purchase, "the warrant failed to give rise to probable cause that contraband would be found within [Loper's] individual apartment rather than the multi-unit complex as whole."[14]  This argument ignores the fact that all three informants identified Loper's apartment as the site of his illicit drug activity.  It also ignores that the police "instructed [CI1] to respond to 812 N. Adams St Apt #1[] for the purpose of purchasing heroin."[15]  These allegations supported "a practical, common-sense decision," when considered together with all the circumstances described in the warrant application, that there was a fair probability that contraband or evidence of a crime would be found in Loper's apartment.[16]

---

[13] The warrant application describes 812 North Adams Street as a "residence" and Apartment #1 as "the downstairs apartment to the immediate left."  Photographs of the residence, though not a part of the warrant application but admitted at trial as Defendant's Exhibits 1 and 5, show that 812 North Adams Street is a two-story row house.

[14] Opening Br. at 8.

[15] App. to Opening Br. at A24.

[16] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) ("The magistrate issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice